ALBERTINA J. GUERIN, EXECUTRIX OF THE ESTATE OF JAMES J. GUERIN, DECEASED, APPELLEE, V. CLARENCE W. FORBURGER, APPELLANT.

74 N. W. 2d 870

Filed February 10, 1956. No. 33848.

*Wear, Boland & Mullin,* for appellant.

*Matthews, Kelley, Fitzgerald & Delehant* and *John E. Murphy,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Albertina J. Guerin, as executrix of the estate of James J. Guerin, deceased, brought this action in the district court for Douglas County against Clarence W. Forburger. The purpose of the action is threefold:

First, to recover for loss of support for herself as the widow of the decedent; second, to recover for expenses had in connection with decedent's burial; and third, to recover for damages to decedent's car. The basis on which such recovery is sought is the claim that decedent was killed because of negligence which occurred in the operation of a truck, which consisted of a tractor and trailer, which negligence it is claimed was the proximate cause of his death. Issues were joined, including that of contributory negligence. Trial was had and the jury returned a verdict for the plaintiff as follows: First cause of action, $20,350; second cause of action, $456.50; and third cause of action, $687.50. The trial court entered a judgment on the verdict. Defendant thereupon filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. This motion the trial court overruled and this appeal was taken from that ruling.

The first contentions appellant makes arise out of his claim that the trial court erred in overruling his motion for judgment notwithstanding the verdict. They are two in number.

The first is that the trial court erred in submitting to the jury the following issue with reference to negligence on his part, to wit: "In the truck's failing to have properly lighted taillights and warning lights visible at a reasonable distance from the rear of such trailer."

The second is, in submitting to the jury, in view of the evidence adduced, the question of whether or not there was contributory negligence on the part of appellee's decedent, James J. Guerin.

In considering the evidence adduced to determine these questions we apply thereto the following principle: "A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such

party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569.

"The rule is that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Farr Co. v. Union P. R. R. Co., 106 F. 2d 437. See, also, Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551.

Further: "In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him." Stark v. Turner, *supra.* See, also, Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669.

"In those cases where reasonable minds may differ on the question of whether or not the operator of an automobile exercised the ordinary care required of him under the circumstances of the particular situation, the issue of negligence on the part of the operator is one of fact to be determined by a jury." Wiesenmiller v. Nestor, 153 Neb. 153, 43 N. W. 2d 568. See, also, Parsons v. Cooperman, 161 Neb. 292, 73 N. W. 2d 235.

The accident in which James J. Guerin was killed happened shortly after 5:30 p. m. on Thursday, December 6, 1951. It occurred on the Dodge Street Highway, which is also designated and known as U. S. Highway No. 30-A, at a point some 18 miles west of Omaha, Nebraska. Dodge Street Highway runs east and west and is a four-lane highway, the north two lanes being for the use of west-bound traffic and the south two lanes being for the use of east-bound traffic. The center of these four lanes is indicated by two yellow lines. The point of the accident was about three-fourths of a mile east of a bridge in the highway built across the

Elkhorn River. At a point about one-fourth of a mile east of this bridge there begins a gradual upgrade in the highway which extends for over a half mile to the east before coming to a crest. There is a slight or gradual curve toward the southeast of this upgrade beginning at what is referred to in the record as the Skyline Road. The accident happened in the south lane of the two east-bound lanes. Both truck and car were traveling east. It resulted from decedent running the right front of his car, a 1949 Chevrolet two-door sedan which he was driving, into and under the left rear of the truck which was being operated by Calvin John Potter. At the point of the accident the surfaced part of the highway is 41 feet wide, the surface material being referred to as black-top and described as black in color.

At the time of the impact decedent made no effort to stop or slow down the car he was driving. He ran into the truck, which was either stopped or moving very slowly, while going at least 50 miles an hour. The impact was of such force that it snapped the 3-inch steel axle under the trailer and drove the left dual wheels out from under it and onto the highway to the left or north of the tractor. The truck came to an immediate stop in the south lane. The car continued on but in a semicircle or arc to the north. It first crossed over into the south lane for west-bound traffic. It then swerved back to the south in front of the truck. It continued across the south shoulder of the highway, coming to a stop in a deep ditch or ravine adjacent thereto. The car, when it stopped in the ditch, was some 65 feet east of the front of the truck. It was badly demolished, particularly the right front and side. Decedent was found lying at about the center of the traveled portion of the highway some 40 feet east of the front of the truck. He died shortly after the accident from injuries suffered therein.

The truck was a 1941 International consisting of a

tractor and trailer, the latter having a flat body. It was owned by the Manhattan Cut Stone Company, a partnership, whose principal place of business was located in Manhattan, Kansas. The partnership, which consisted of appellant and his son John Casper Forburger, was engaged in the business of cutting stone. The driver of the truck was an employee of this partnership and at the time was engaged in business for the partnership and doing work within the scope of his employment. He was hauling a load of about 10 tons of Kansas stone, cut for home veneer use, from Manhattan, Kansas, to Omaha.

The foregoing is a general description of when, where, and how the accident happened. We shall discuss the evidence in more detail as it relates to the several issues raised and herein disposed of.

Appellant contends appellee failed to prove any actionable negligence against him. The issue of negligence for which appellant could be found responsible, insofar as the trial court submitted it to the jury, has already been set forth herein. As stated in Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462: "It is error for the court to submit to a jury a charge of negligence which finds no support in the evidence."

Section 39-778, R. R. S. 1943, provides, insofar as here material, that: "(a) Every motor vehicle upon a highway within this state during the period from a half hour after sunset to a half hour before sunrise, and at any other time when there is not sufficient light to render clearly ·discernible persons or vehicles upon the highway at a distance of five hundred feet ahead, shall be equipped with lighted front and rear lamps as in this section respectively required for different classes of vehicles. (b) Every motor vehicle, other than a motorcycle, road roller, road machinery or farm tractor, shall be equipped * * * with a lamp on the rear exhibiting a red light visible under normal atmospheric conditions from a distance of at least five hundred

feet to the rear of such vehicle, * * * the tail light shall show red directly to the rear, glass therein shall be unbroken, the lamp shall be securely fastened, and its electric circuit free from grounds or shorts; * * *."

Section 39-735, R. R. S. 1943, provides, insofar as here material, that: "Every vehicle * * * (1) having a width, including load, of eighty inches or more * * * shall display, when driven, pulled, operated, or propelled upon any paved or bituminous surfaced highway, during the period from one half hour after sunset until one half hour before sunrise, and at all other times when there is not sufficient light to render such vehicle clearly discernible, two clearance lights on the left side of such vehicle. * * * The other clearance light shall be located at the rear and display a red light visible, under normal atmospheric conditions, from a distance of three hundred feet to the rear of said vehicle. The light at the rear shall be located at a sufficient distance above the tail light of such vehicle so it will not be confused with such tail light by those approaching from the rear. Such light shall be located on a line with the extreme outer point of such vehicle or the load thereon; * * *."

"The violation of a statute the design of which is to protect the safety of people in the use of public highways is evidence of negligence." Segebart v. Gregory, 156 Neb. 261, 55 N. W. 2d 678.

"The violation of statutes regulating the use and operation of motor vehicles upon the highway is not negligence per se, but evidence of negligence, which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby, * * *." Plumb v. Burnham, 151. Neb. 129, 36 N. W. 2d 612. See, also, Mundy v. Davis, 154 Neb. 423, 48 N. W. 2d 394.

The evidence shows the rear of the trailer was equipped with electric lights sufficient to meet the foregoing requirements and that, at the time of the accident,

the driver of the truck had turned them on. However from the evidence of Myrtle Jacobsen, who had driven her car past the truck just before the accident happened, and that of Fern Fallon, who was riding in the car with Myrtle Jacobsen, the jury could find the taillight and clearance light located in the left corner of the trailer were not lit.

But appellant contends that even assuming appellee has established sufficient evidence to support a charge of insufficient lighting she has in no way established that it was a proximate cause of the accident; that is, she has failed to prove any causal connection between the absence of the taillight or clearance light and the accident itself.

"Negligence to justify a recovery of damages must have proximately caused or contributed to the injury for which compensation is sought." Ricker v. Danner, 159 Neb. 675, 68 N. W. 2d 338.

"The proximate cause of an injury is that cause which, in the natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250. See, also, Ricker v. Danner, *supra.*

Based on the evidence adduced we think it establishes sufficient facts upon which a jury could base a finding that the driver of the truck was guilty of negligence in operating it without a lighted taillight or a lighted left clearance light on the rear of the truck and that such negligence was a proximate cause of the accident. We therefore find the court was not in error in submitting the issue of negligence on the part of appellant that it did.

We come then to the question of whether or not decedent was guilty of such conduct that would, as a matter of law, preclude appellee from recovering on any right she might otherwise have.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty

which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." Mundy v. Davis, *supra*. See, also, Murray v. Pearson Appliance Store, *supra*.

"It is only where the evidence shows beyond dispute that plaintiff's negligence is more than slight as compared with defendant's negligence that it is proper for the trial court to instruct the jury to return a verdict or, as in the instant case, to dismiss the plaintiff's petition. See, Pahl v. Sprague, supra (152 Neb. 681, 42 N. W. 2d 367); Gorman v. Dalgas, supra (151 Neb. 1, 36 N. W. 2d 561)." Evans v. Messick, 158 Neb. 485, 63 N. W. 2d 491. See, also, Parsons v. Cooperman, *supra*.

In regard to the situation here involved we have laid down the following principles:

"As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision." Murray v. Pearson Appliance Store, *supra*. See, also, Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., *supra*.

"The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it." Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106. See, also, Murray v. Pearson Appliance Store, *supra;* Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., *supra*.

"The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way or is driving on the side of the highway where he has

a lawful right to be. He must keep a lookout ahead or in the direction of travel or in the direction from which others may be expected to approach and is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance." Murray v. Pearson Appliance Store, *supra*.

"There is nothing that will excuse his failure to see what was plainly in sight if he had maintained a proper lookout." Buresh v. George, *supra*. See, also, Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., *supra*.

This rule has been applied in numerous situations of which the following are examples: Where an unlighted wagon was crossing a highway, Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473; where a road maintainer was on the wrong side of the road just over a hill, Most v. Cedar County, 126 Neb. 54, 252 N. W. 465; where an unlighted car had been stopped at night on the traveled portion of the road, Stocker v. Roach, 140 Neb. 561, 300 N. W. 627, Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757, Mundy v. Davis, *supra;* where a truck was stopped on a lighted street at night, Buresh v. George, *supra;* and where a bus had been stopped or was stopping on a highway during the day, Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., *supra*.

However, we have also held that: "* * * the rule that a motorist is guilty of negligence as a matter of law if he drives his automobile so fast that he cannot stop in time to avoid a collision with an object, within the area lighted by the lamps on the automobile, has no application in those cases wherein reasonable minds might differ on the question of whether or not the operator exercised the care, caution, and prudence required of a reasonably careful, cautious, and prudent person under the circumstances of the particular situation." Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422.

And as stated in Miers v. McMaken, *supra:* " 'To the general rule, as pointed out in the opinion in the case

cited (Roth v. Blomquist, supra), there are exceptions, where the object or obstruction or depression is the same color as the roadway and for that reason, or for other sufficient reasons, cannot be observed by the exercise of ordinary care in time to avoid a collision. * * *.' (Adamek v. Tilford, 125 Neb. 139, 249 N. W. 300.)"

Because of the factual situation involved we have held it was a question for the jury in cases involving an unlighted car stopping on the traveled portion of a highway, Haight v. Nelson, 157 Neb. 341, 59 N. W. 2d 576, Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N. W. 623; the same as to a truck, Giles v. Welsh, 122 Neb. 164, 239 N. W. 813; and as to an oil transport, Fick v. Herman, 159 Neb. 758, 68 N. W. 2d 622.

It is self evident from the foregoing that each case must necessarily depend upon its own facts and that the court must, in each instance, determine whether or not the situation presents a question of fact for the jury or a question of law for the court.

We shall proceed to discuss the evidence as it relates to various factors which might relieve the decedent from the duty he had to see the truck in time to avoid it, either by stopping or by turning out and passing, there being plenty of space available for that purpose.

Appellee says there were headlights on a car coming from the opposite direction and that these headlights tended to momentarily distract decedent's attention, particularly since he was traveling around a curve at the time.

The evidence adduced does not support appellee's contention. The only car that is shown to have been coming from the east at the time of the accident was that of Warren Safford, the only eyewitness thereto. His testimony was that he had on his parking lights and not his headlights.

Appellee also says it was dark, blustery, and misty, and the visibility was extremely bad. Although there is an extremely wide variation in what the several wit-

nesses testified to in this regard, however, there is competent evidence from which a jury could find the foregoing to be true. But these factors would not help appellee for we have said: "On principle it would appear that the existence or presence of smoke, snow, fog, mist, blinding headlights or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances. Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825; Fischer v. Megan, 138 Neb. 420, 293 N. W. 287." Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315. See, also, Murray v. Pearson Appliance Store, *supra;* Mundy v. Davis, *supra.*

Appellee also refers to the fact that the accident occurred just after the deceased had come off a curve and straightened out his car. There is a slight curve in the highway and the accident did happen some distance east thereof. Although one witness estimated the accident happened about 50 feet east of the point of the curve, however, the exact point of the accident is established on the pictures of the highway and is much more than 50 feet east of the point of the curve, in fact it is several hundred feet. The evidence, particularly the pictures, shows the curve to be very gradual and causes no obstruction to the driver's view as he is driving east. It may be that a driver's lights, as he is traveling around the curve, might not at all times focus exactly down the lane in which he is driving. We said in Most v. Cedar County, *supra:* "He had no right to presume that, beyond his vision, the road on his right-hand or north side would be free from obstructions on the west side of the hill." We think the foregoing has application here.

We also held in Ross v. Carroll, 138 Neb. 1, 291 N. W. 726, that: "This rule (a motorist driving at such speed that he cannot stop or turn aside in time to avoid

an obstruction discernible within the range of his vision is usually negligent) applies to a driver of a motor vehicle when approaching and going around curves."

The trailer was regularly equipped with six electric lights facing the rear. They consisted of a taillight, two clearance lights, one at each corner, and three clearance lights located immediately below the floor of the trailer. These three lights were recessed some 8 inches. The floor of the trailer was about 4 feet above the surface of the highway.

It is contended that the truck did not have a taillight or left rear clearance light burning. This we have already discussed. However, it is shown without dispute that lights were lit on the rear of the truck at the time of the accident. Myrtle Jacobsen was driving her car east on the highway at the time and had driven past the truck just before the accident, which happened after she had returned to the outer lane but before her car passed over the crest of the hill. She was driving about 40 miles an hour. She testified it was dusk so she was driving with her headlights lit but turned down. She said she saw some kind of lights on the rear of the trailer. The same is true of Fern Fallon who was riding with her. She testified she saw some sort of lights although she thought they were reflectors. Warren Safford, who witnessed the accident, said there were lights lit on the back of the truck immediately following the accident. The same was true of Fred Whalen, a trooper for the Nebraska Safety Patrol, who came upon the accident a few minutes after it happened. The lights burning after the accident consisted of the cluster of three clearance lights recessed under the center of the floor of the trailer and the right clearance light. They all faced oncoming traffic. The cluster of three clearance lights was located about 4 inches under the floor of the trailer and covered about an 18-inch spread.

We have not overlooked the testimony of Marvin Heifner and George Witte in this regard but their testi-

mony related to the condition of the rear of the truck when they passed it, which was prior to that of the witnesses hereinbefore referred to.  These two witnesses did not testify as to the condition thereof just immediately before, at, or immediately after the accident.

Appellee suggests the rear of the truck and the cluster of lights were covered with debris from the road which tended to blend it with the color of the highway, which was black.

The floor of the trailer was 8 feet wide.  There was a channel edge or strip from 6 to 8 inches wide completely across the back of it.  This had been painted with black and white diagonal stripes.  Cut stone was stacked on the trailer to a height of about 2 feet and held in place by a homemade wooden rack which extended somewhat above the stone.  The stone was mixed, being white and yellow in color.  It had a tendency to turn yellow when wet.  The rear of the truck, including the lights, channel edge, rack, and stone were covered with dirt from the surface of the road which had splashed on it while traveling thereon.  The question arises, did this present a situation that would create an exception to the rule and present a jury question?

Marvin Heifner, who apparently was the first witness who saw and passed the truck did so just east of the bridge across the Elkhorn River.  It should be here stated that all witnesses placed the truck in the south lane for east-bound travel and it was there when the accident happened.  Heifner testified he was returning to Omaha at about 5:30 p. m. on the day of the accident; that he was driving in the south lane for east-bound traffic; that he was going about 50 miles an hour; that he had his lights on; that they were adjusted for country driving; that as he came to the bridge he saw a car some 150 to 175 feet ahead; that he slowed down to 40 to 45 miles an hour to stay behind the car; that about 100 to 150 feet east of the bridge the car ahead turned to the left and exposed

the truck directly ahead; that immediately thereafter he noticed the truck as a dark grey object, although he got the impression it was loaded with heavy white objects; that he thereupon turned out and passed it; that the truck was traveling 2 to 3 miles an hour; and that it did not have its rear lights lit.

George Witte of Valley, Nebraska, testified he was hauling a load of gravel and sand to Omaha and passed the truck at about the point where the accident happened. He testified he was driving about 15 to 20 miles an hour; that it was getting dusk but he was not sure as to whether or not he had on his headlights; that the truck was stopped in the outside lane for eastbound traffic several hundred feet east of the curve; that it did not have its rear lights lit; that he first saw the truck when it was about 100 to 150 feet away; and that he turned out and passed it.

Myrtle Jacobsen, whose testimony we have already referred to, testified further that she first saw the truck after they came around the curve; that it was 2 or 3 car lengths away; and that it appeared as a gray box. We have already referred to the lights which this witness observed on the rear of the trailer. Fern Fallon testified to about the same facts except she thought the lights she observed were reflectors.

On the other hand the only eyewitness to the accident, Warren Safford, a deputy sheriff for Douglas County, said he was driving with his parking lights but had visibility for a quarter of a mile. He testified he saw the accident happen just after he came over the crest of the hill; that the truck had its headlights burning; and that it was traveling from 4 to 5 miles an hour. He described the color of the stone on the truck as "white chalk."

Fred Whalen, a state trooper, who came upon the accident from the west a few minutes after it happened, said that with his headlights on he had visibility as to unlighted objects of from 350 up to 400 feet. We only

mention the latter to show the wide variation in the testimony of the witnesses in this regard.

We have come to the conclusion that the evidence adduced does not present a factual situation creating an exception to the general rule and thus presenting a jury question. This is further evidenced by flash pictures taken of the rear end of the trailer shortly after the accident and the experiences the other drivers had who came upon the truck that same evening.

We think the evidence conclusively shows the decedent was driving his car without lights and drove so close to the truck before he saw it that he could neither stop nor turn out in time to avoid the collision. This is fully shown by the testimony of Warren Safford, the only eyewitness. We are fully aware of the evidence of Fern Fallon that after she heard the impact she looked to the rear and saw the car and that it had headlights burning. She must have been mistaken and thought the truck lights were those of the car for considering the nature of the accident and the condition of the car after the accident, as shown by the pictures taken of it shortly thereafter, it could not have been possible for the headlights thereon to have been burning. However, this fact is not here controlling for the principle applies in either case, that is, whether decedent had his lights lit or not.

While we have come to the conclusion here reached as a matter of law we think the jury's verdict sustains the same result as a matter of fact. Appellee introduced John J. Larkin, a funeral director, to establish the expense had in connection with decedent's burial. This was in support of appellee's second cause of action. He enumerated the items involved, the amounts charged therefor, that they had been paid, and that the amounts charged were the fair and reasonable value thereof. No other evidence was adduced by either side in regard thereto. The total was fixed at $830. The jury returned a verdict therefor in the sum of $456.50 or 55

percent of the amount. In support of appellee's third cause of action it was stipulated and agreed by the parties that the reasonable value of the property damage to decendent's car, which had been badly demolished, was $1,250. The jury returned a verdict on this cause of action for $687.50 or 55 percent. Thus it is self evident the jury reduced the amount of appellee's recovery to the extent of 45 percent. This clearly indicates the jury found decedent to have been guilty of more than slight negligence and in a degree sufficient to defeat any right of recovery herein.

We have fully considered the factual situation herein disclosed and to say it presents a question for a jury would be to completely destroy the principle here controlling. In view of what we have said we find the trial court should have sustained the appellant's motion for judgment notwithstanding the verdict. We therefore reverse the judgment of the trial court refusing to do so and remand the cause with directions that such motion be sustained and the action dismissed.

There are other questions raised by appellant relating to the overruling of his motion for a new trial but in view of the result herein arrived at a discussion and disposition thereof would serve no useful purpose.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., participating on briefs.