DIANE NEELD BOTSCH, APPELLANT, v. JOSEPH REISDORFF AND CHRISTIAN MAROHN, APPELLEES.

226 N. W. 2d 121

Filed February 18, 1975. No. 39581.

William A. Wieland of Healey, Healey, Brown, Wieland & Burchard and Fredrick L. Swartz, for appellant.

Ray C. Simmons, for appellee Marohn.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is an action growing out of a guest passenger automobile accident arising from an automobile-tractor collision in Butler County, Nebraska. Plaintiff and defendant Reisdorff stipulated that judgment be entered in favor of plaintiff against Reisdorff in the sum of $8,500, and such judgment was entered by the District Court. The theory of the plaintiff's case is that the acts of negligence alleged in her petition constituted both ordinary and gross negligence. On appeal, the plaintiff challenges the constitutionality of the guest statute, section 39-6,191, R. R. S. 1943, under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and the comparable and complementary provisions under the Constitution of the State of Nebraska. The issue is also presented as to the sufficiency of the evidence to submit the issue of gross negligence to the jury. The trial court refused to submit this issue and directed a verdict for the defendant Marohn.

We hold that the guest statute does not violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, nor any provision of the Constitution of the State of Nebraska, and reverse and remand the cause for trial upon the issue of gross negligence.

Our guest statute, section 39-6,191, R. R. S. 1943, provides in parts pertinent to the issues here as follows: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver * * * because of the gross negligence of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term guest is hereby

defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor * * * ."

Motor vehicle guest statutes containing the same essential principles now under constitutional attack, have been adopted in more than one-half of the states, and the principle that automobile owners or operators be relieved from liability to their guests or passengers for ordinary negligent conduct has been judicially imposed in still more states. See Prosser, Torts (4th Ed.), § 34, p. 186. Ever since their inception in the early twentieth century, guest statutes have been under continual attack on both state and federal constitutional grounds similar to those raised in this case. Notwithstanding the attacks, the states and the United States Supreme Court have consistently held statutes such as ours constitutional. See, Silver v. Silver, 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221 (1929); Rogers v. Brown, 129 Neb. 9, 260 N. W. 794 (1935). Almost the total thrust of the plaintiff's attack upon the guest statute is a contention that this court should adopt the reasoning and authority of the California Supreme Court in Brown v. Merlo, 8 Cal. 3d 855, 106 Cal. Rptr. 388, 506 P. 2d 212 (1973). Rather than rest our decision on the simple proposition that Silver is still the law of the land and that we adhere to it, we examine the contentions of the plaintiff which in turn are based upon the argument that modern conditions, social and economic, demand a reconsideration of the Silver rationale and of the other cases and require us to hold our guest statute unconstitutional.

So far as we can determine, since Brown v. Merlo, *supra*, courts of six states have considered whether their guest statutes violated the Equal Protection Clause of either the federal or their own Constitution. Four states have held that neither state nor federal Constitution was violated by their guest statutes. Justice v. Gatchell, 325 A. 2d 97 (Del., 1974); Keasling v. Thompson, 217 N. W. 2d 687 (Iowa, 1974); Cannon v. Oviatt, 520 P. 2d

883 (Utah, 1974); Tisko v. Harrison, 500 S. W. 2d 565 (Tex. Civ. App., 1973). Two state courts have held their guest statutes unconstitutional, one on grounds that it violated the federal and state Constitutions, Henry v. Bauder, 213 Kan. 751, 518 P. 2d 362 (1974), and the other a North Dakota case on grounds that only the state Constitution was violated under its particular constitutional context. Johnson v. Hassett, 217 N. W. 2d 771 (N. D., 1974).

The test, under the Fourteenth Amendment to the Constitution of the United States, when a state statute operates to single out a class of people for special treatment, is whether the suspect classification bears some rational relationship to the legitimate purposes of the legislation. In Dandridge v. Williams, 397 U. S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970), a very recent case, the United States Supreme Court said: "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality. * * * The problems of government are practical ones and may justify, if they do not require, rough accommodations - illogical, it may be, and unscientific. * * * A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. * * * But the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. * * * It is enough that the State's action be rationally based and free from invidious discrimination." See, also, Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369 (1911); McGowan v. Maryland, 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); San Antonio Independ-

ent School Dist. v. Rodriguez, 411 U. S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973).

Stated broadly the contention is that a nonpaying guest is singled out for special treatment in that he is denied the cause of action against his host for negligently inflicted injuries. The contention is, following Brown v. Merlo, *supra*, that there is no legitimate state interest justifying this classification on the basis of the promotion of hospitality, and the prevention of fraud and collusion. The question, therefore, before the court, under the test pronounced above, is whether the denial of a remedy for negligently inflicted injuries to automobile guests is rationally related to the aforementioned state purposes. First, it is contended that the "protection of hospitality" justification cannot be sustained by making a distinction between guests in automobiles and other social guests. This reasoning is inappropriate because the law of the State of Nebraska, contrary to California, does make a distinction between the duty owed a trespasser, a business invitee, and a licensee or social guest. See Casey v. Addison, 190 Neb. 634, 211 N. W. 2d 410 (1973). In other words, the contention of the plaintiff is partially based upon the case of Rowland v. Christian, 69 Cal. 2d 108, 70 Cal. Rptr. 97, 443 P. 2d 561 (1968), and the California statute, which together hold that guests generally can demand from their host liability for ordinary negligence. In other words, the distinctions as to liability that Nebraska law draws in different classes is consistent with the distinctions made as to liability for conduct in other areas and the contention of an invidious or irrational discrimination cannot be applied under current Nebraska law.

The plaintiff next argues, again following Brown v. Merlo, *supra*, that holding a host to a lower standard of care for a nonpaying guest is irrational and not justified by the fact that the guest did not pay consideration. We reject this contention. In the basic and controlling case of Silver v. Silver, 108 Conn. 371, 143 A. 240 (1928),

affirmed by the United States Supreme Court, the court pointed out that a distinction between the duty imposed in the case of grautitous performance of services and the performance of them for hire is to be found running through many fields of law, for example, the higher degree of care required by carriage for hire in the common carrier over other types of carriers, and the common and historic distinction between the business invitee and the ordinary social guest. In Silver v. Silver, 108 Conn. 371, 143 A. 240 (1928), it is stated: "There is inherent justice in the requirement that one who undertakes to perform a duty gratuitously should not be under the same obligation as one who enters upon the same undertaking for pay * * *. * * * It seems to us that the legislature was acting well within the limits of the police power in making a distinction between the degree of care to be exercised by the owner or operator of a motor vehicle toward a guest and that to be exercised toward one who pays for his transportation." The legislative and judicial minds in the past 50 years have consistently held that this distinction between a paying and a gratuitous guest could rationally take precedence in the legislative mind over and above the social engineering notion of shifting liability for negligently inflicted injuries to a guest on to hosts or to the general motoring public's liability insurance. We, therefore, hold that the Legislature could and did act reasonably by differentiating between standards of care owed on the basis of compensation paid, and that no invidious discrimination is present in the enactment of such a standard.

The plaintiff contends, following Brown v. Merlo, supra, that the prevalence of automobile liability insurance carried by drivers nowadays has eliminated the notion of ingratitude in a guest suing his host for ordinary negligence. On the contrary, the legislative justification still may well be founded on the ingratitude element for the simple reason that despite insurance it still could be rationally determined that the ingrati-

tude element would tend to inhibit hospitality. A thorough review of these considerations can be found in Casenote, 53 Neb. Law Rev. 267 (1974). We will not review all of them. Many tort personal injury cases have in the past and will continue to result in judgments which exceed the host's liability insurance limits. In Nebraska, statutory required policy limits are relatively low. See § 60-509, R. R. S. 1943. Moreover, the fact that a significant number of drivers do not have any liability insurance is evident by section 60-509.01, R. R. S. 1943, which requires uninsured motorist's coverage to be offered in automobile liability insurance policies. In short, possibilities for the ingratitude which inhibit hospitality still exist despite liability insurance, and the Legislature acted rationally in allowing legislation to stand which cured this evil. There is no merit to this contention.

The plaintiff contends, again pursuant to Brown v. Merlo, *supra,* that the limitation of a guest's redress for negligent injuries cannot be rationally justified by the desire to promote hospitality. We hold that the Nebraska Legislature could reasonably believe that more hospitality results from the guest statute being in force than without it. We realize, of course, in balancing the considerations present in the enactment of the guest statute, that the Legislature may well decide to reevaluate the varying weight of the many considerations and policy determinations present in the enactment thereof. It is not a judicial function to enter that area. We may further observe that the guest statute perhaps is not perfectly designed to accomplish its ends. But such a design need not and could not be met, especially when a law attempts to thread its way and make a balanced decision among the multitude of considerations that are present in the social and economic context of this statute. As we have pointed out the Equal Protection Clause does not require such perfection, nor such a rigorous standard of rationality as is contended for in this case. It is well

settled that even unwise or improvident laws, if based upon some sort of a rational conception, can pass constitutional muster.

We summarize very briefly other considerations that could conceivably be rationally related to the enactment of a guest statute. The regulation of motor vehicle use is a valid legislative occupation, and as we have seen, automobile guests can validly be distinguished from other social guests in the State of Nebraska. We observe that in Nebraska much state money goes into highway construction and state maintenance. Since, as we have held, the guest statute can rationally be conceived to encourage hospitality, it affects both the number of cars and the total cumulative mileage on highways, which directly bears on the state's economic burden. In the same way, the guest statute promotes the conservation of petroleum and other natural resources which are consumed in highway travel. We observe that the financial consequences to a host in a lawsuit against him by a guest are very significant in the automobile context because the degree of potential physical injury is very great, especially in comparison with injuries suffered by guests in the other context of liability law. Whatever the argument may be as to the respective weight of the many considerations which go into making these decisions, it is clear that the Legislature is the proper decision-making forum in which to strike the balance in the matter, and this court will not usurp the legislative function.

Although the foregoing reasons alone are sufficient to sustain the provisions of our guest statute against the contention of constitutionally inviduous discrimination, we deem it necessary to consider the strongly urged contention by the plaintiff, again pursuing Brown v. Merlo, *supra*, that the statute is not rationally related to a legitimate purpose of preventing collusion and fraud. It is said that this is so because a statute eliminating the cause of action for ordinary negligence for *all*

automobile guests when only a small segment of the guest class may file collusive suits was a classic example of impermissible, over-inclusiveness of classification which was contrary to traditional notions of fairness or reasonableness.   It is stated paying passengers might often include friends and relatives in various situations and that parties because of their closeness of relation might still be likely to collude in proving ordinary negligence because the guest statute does not reach them. Further, it is stated that the class of nonpaying guests includes hitchhikers with whom the host is unlikely to collude.   It is also stated that the statue is ineffective as a remedy for collusion and that the remedy for collusion lies in the integrity of the discovery of truth in our adversary system.

Again, this contention falls because it requires more of the guest statute than the Equal Protection Clause mandates.   The notion of impermissible over-inclusiveness has been held to have no place in the equal protection analysis of social and economic regulations not affecting freedoms guaranteed by the Bill of Rights.   In Dandridge v. Williams, *supra*, it is stated as follows: "For this Court to approve the invalidation of state economic or social regulation as 'overreaching' would be far too reminiscent of an era when the Court thought the Fourteenth Amendment gave it power to strike down state laws 'because they may be unwise, improvident, or out of harmony with a particular school of thought.'   Williamson v. Lee Optical Co., 348 U. S. 483, 488.   That era long ago passed into history.   Ferguson v. Skrupa, 372 U. S. 726."   See, also, Railway Express Agency, Inc. v. New York, 336 U. S. 106, 69 S. Ct. 463, 93 L. Ed. 533 (1949); Keasling v. Thompson, *supra*.   We point out this argument assumes that the majority of guests and hosts are honest, and that only a small number would act collusively.   Casenote, 53 Neb. Law Rev. 267 (1974).   But it is obvious that this is mere speculation.   There is no responsible data available, so far as

this court knows, on whether the majority of automobile guests are honest or not. As in other areas, including the various classes of cases in which separate burdens of proof are judicially required, it is a reasonably conceived ground by the Legislature to determine that the temptation or actual incidence of fraud is very great; or that collusion is especially difficult to detect; or that the judicial system should not be responsible for having to detect fraud. A Legislature or a court is reasonably justified in believing that the alternative of requiring a higher degree of proof in automobile guest cases, for example requiring a standard of clear and conclusive evidence instead of a preponderance of the evidence, is a definite factor in controlling the problem of collusive lawsuits and losses. We fail to see the difference between an acknowledged power by judicial decision or legislation to invoke a higher degree of proof in certain classes of cases and the requirement of the guest statute as to proof of a higher degree of negligence. Whatever the merits may be as a matter of policy under the changing conditions that may be present in society today, we cannot say that the Legislature has acted unreasonably in choosing to deny the ordinary negligence cause of action in a wholesale manner where it felt the greatest potential for collusion existed. We, therefore, hold that the Legislature did not act irrationally in choosing the prevention of collusion and fraud as one of the reasons for the adoption of the guest statute and a different standard for the proof of negligence.

Consequently, we hold that the Nebraska guest statute as presently enacted, is not in violation of the federal or the state Constitution, and that the contentions of the plaintiff as to its unconstitutionality are without merit.

Our decision in this matter is reinforced by the legislative history of attempts to repeal the guest statute. In recent years the matter has been before the Legislature and it has elected not to repeal the guest statute.

In the 1969 session of the Legislature the repeal of the guest statute was presented to the Judiciary Committee in L.B. 555 and reported out for consideration on the floor. The bill was indefinitely postponed by a vote of 22 to 10. In 1971, L.B. 897, which had as its purpose the repealing of the guest statute, was withdrawn by its sponsor. In the 1972 Legislature, L.B. 1461 was introduced for the purpose of repealing the guest statute, but was also withdrawn. At a minimum, the legislative history of the attempts to repeal the guest statute are consistent with the conclusion that the viability and force of the arguments for the retention of the purposes of the guest statute are still very much alive.

Since the guest statute is applicable we now consider the question of whether the evidence under the facts in this case was sufficient to submit the issue of gross negligence to the jury.

The general factual background is that on November 16, 1966, the plaintiff, Diane Neeld Botsch, was a guest in a 1964 Chrysler sedan driven by the defendant, Christian Marohn. At dusk, the Marohn car was proceeding down a hill and had started up the grade of the next slope or hill when it was in collision with the tractor driven by Joseph Reisdorff, both car and tractor being operated in the west and southbound lane of the highway. As the result of the collision, the plaintiff was seriously injured.

The applicable rules that we use to evaluate the evidence have recently been stated in the case of Demont v. Mattson, 188 Neb. 277, 196 N. W. 2d 190 (1972). Therein we said: " 'Gross negligence' within the meaning of the automobile guest statute is great and excessive negligence, or negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty.' NJI No. 7.51. See, also, Olson v. Shellington, 167 Neb. 564, 94 N. W. 2d 20. Where several acts of negligence are supported by the evidence 'no one act is to be segregated and weighed separately to de-

termine whether or not it constituted gross negligence. Instead the several acts are to be considered as a whole.' NJI No. 7.51. See, also, Olson v. Shellington, supra; Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184; Carley v. Meinke, 181 Neb. 648, 150 N. W. 2d 256. * * * This court has frequently reiterated in slightly varying language that whether gross negligence exists must be ascertained from the facts and circumstances of each particular case and not from any fixed definition or rule. Boismier v. Maragues, supra."

Under the issues presented, we examine the evidence as to failure of the defendant to keep a proper lookout; failure to keep his automobile under reasonable control; and that he was operating his vehicle at an excessive rate of speed.

Resolving the conflicts and the inferences from the evidence in favor of the plaintiff, as we are required to do, the evidence shows the following facts: As the defendant proceeded down the slope immediately before the collision, his headlights were on. The highway had a painted dividing line and both the defendant's car and the tractor with which he was in collision were on the west and southbound lane of traffic. At the time of the collision the tractor was proceeding south at a rate of about 16 miles per hour. Three witnesses testified that a short time prior to the accident they saw the tractor with a white light at the rear of the tractor. The defendant testified that he did not see the tractor in the beam of his headlights until it was 100 feet from his car. At that time, he had his foot on the accelerator. He applied his brakes, but the impact occurred almost *at the same time* that he saw the tractor in his headlights. The tractor was clean and had yellow wheeled rims. There is also evidence that there was sufficient light to make the tractor visible without the aid of headlights or rear lights. We have consistently held that it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot

stop in time to avoid a collision with an object within the range of his vision. Guerin v. Forburger, 161 Neb. 824, 74 N. W. 2d 870 (1956); Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250 (1952); Pool v. Romatzke, 177 Neb. 870, 131 N. W. 2d. 593 (1964); Kehm v. Dumpert, 183 Neb. 568, 162 N. W. 2d 520 (1968). The tractor ahead of the defendant was directly ahead of him in its proper lane of traffic. It was also traveling forward and at an approximate rate of speed of 16 miles per hour. The evidence is overwhelming that it was visible and discernible within his range of vision ahead in his own lane of traffic and discoverable within the beam of his headlights. No excuse or reason appears for his failure to properly observe the tractor. The evidence in this case does not permit a finding that the defendant's actions came within one of the exceptions to the range of vision rule which usually relates to whether the object ahead was visible or discernible. Outside the element of speed, which will be later discussed, we come to the conclusion, under the applicable rule as to the testing of the evidence, that the defendant was guilty of negligence as a matter of law.

We consider the evidence as to the issue of reasonable control of the defendant's vehicle. A driver of a motor vehicle should have his automobile under such reasonable control as will enable him to avoid collision with other vehicles, assuming that the drivers thereof are exercising due care. Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701 (1956); Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767 (1930). There is evidence that when the defendant saw the tractor 100 feet ahead in his headlight beam, the accident occurred almost simultaneously with his application of the brakes. The investigating sheriff did not find any skid marks north of the first gouge mark which marked the impact location. The only inference from this testimony is that the defendant did not or was unable to make any attempt to turn aside or to avoid hitting the tractor which was

traveling ahead and at a reasonable rate of speed in the same lane of traffic as the defendant. Independent of the evidence as to lack of a proper lookout, the evidence is indisputable that after the defendant saw the tractor he was unable to control his automobile so as to avoid colliding with the tractor. It is also readily inferable from the plaintiff's evidence that the tractor was being operated without negligence. It is therefore clear that there was ample evidence on the issue of reasonable control.

We go now to the issue of the defendant's excessive speed and the degree of it. The defendant himself testified that he did not know at what speed he was traveling. One witness, Richard Vlach, testified that while he was traveling in his car at a constant rate of approximately 60 miles per hour and southbound on State Highway No. 15 he was passed by the defendant's car a short distance before the scene of the accident. Distance measurements were made by defendant Reisdorff and introduced in evidence. Plaintiff in her brief calculated the speed at which defendant's automobile was traveling between the time Reisdorff first saw the defendant's car cresting the hill and when the impact finally occurred. Plaintiff argues this evidence indicated that the defendant's car was traveling around 90 miles per hour just before impact. Defendant disputes this argument. Further evidence showed that the impact of the collision broke part of the body of the tractor open, and there was transmission grease and oil on the highway. The investigating sheriff testified that the distance between the northernmost gouge marks on the highway and the tractor indicated the tractor had been pushed a distance of 129 feet. Other evidence as to the size and the weight of the tractor, 5,000 pounds, lead to no other conclusion than that the defendant was traveling at a reckless and dangerous rate of speed under the circumstances. There was additional testimony to the effect that the defendant's mother, riding in the back seat of

the car, had warned the defendant to watch his speed and to drive carefully.

In the determination of whether all the evidence in a specific case is sufficient to submit the issue of gross negligence to the jury we have consistently held that the presence of imminence of danger visible to, known by, or made known to a driver, together with a persistence in negligence heedless of the consequences, are factors to be given material, if not controlling, consideration. Zoimen v. Landsman, 192 Neb. 561, 223 N. W. 2d 49 (1974); Thorpe v. Zwonechek, 177 Neb. 504, 129 N. W. 2d 483 (1964); Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622 (1941).

We consider the acts of negligence together. Not only does the evidence, construed most favorably to the plaintiff, indicate a gross failure by defendant to keep a proper lookout, especially in light of the fact that the vehicle ahead of him was traveling forward in his proper lane of traffic, but it also indicates that this failure to keep a proper lookout was combined with a continuous and persistent operation at a reckless and excessive rate of speed up to the point of collision. In addition, the evidence shows that there was ample opportunity to turn aside or otherwise avoid the collision with the moving tractor in front of him. There was a violation of the range of vision rule which we have held to be negligence as a matter of law. We hold that the evidence as to the various issues of negligence, taken together, were amply sufficient for the submission of the issue of the defendant's gross negligence to the jury and that the court was in error in directing a verdict for the defendant.

Other contentions of the parties have been considered and have been found to be without merit.

The judgment of the District Court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.

McCown, J., dissenting in part.

I dissent from that portion of the majority opinion which holds the Nebraska guest statute constitutional. The basic reasons are set forth in my dissent in Hale v. Taylor, 192 Neb. 298, 220 N. W. 2d 378.

Rational and logical arguments may be made in support of each of the two divergent judicial views regarding the constitutionality of automobile guest statutes. In weighing the conflicting viewpoints, the unequal justice visited upon thousands of guest passengers in the name of legislative public policy becomes the critical weight which tips the scales of justice in favor of the determination that equal protection of the law is denied by the guest statute.

No one really denies that many of the factual assumptions which gave rise to the basic philosophy of the guest statute have disappeared or changed drastically since the statute was adopted in Nebraska in 1931. In the 1975 Legislature, repeal of the guest statute is pending again. Obviously, the Legislature must now determine, in the light of modern concepts of automobile travel and social policy, whether the factual assumptions which supported the initial adoption of the automobile guest statute in 1931 are still present, and, if so, whether they justify the continuation of the public policy reflected by the Nebraska guest statute.

I concur in the determination that there was sufficient evidence of gross negligence in this case to require submission of the case to the jury.