THE GREYHOUND CORPORATION, A CORPORATION, APPELLANT, v. LYMAN-RICHEY SAND & GRAVEL CORPORATION, A CORPORATION, APPELLEE.

72 N. W. 2d 669

Filed October 28, 1955.   No. 33779.

*Fitzgerald, Hamer, Brown & Leahy,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda* and *L. J. Tierney,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

The Greyhound Corporation brought this action in the district court for Douglas County against the Lyman-Richey Sand and Gravel Corporation. The purpose of the action is to recover damages caused to a bus owned and operated by the Interstate Transit Lines when one of the defendant's trucks ran into it. Plaintiff alleged the proximate cause of the accident, which caused the damages, was certain acts of negligence on the part of the driver of the truck. Defendant filed a counterclaim based on the same accident. It recovered a verdict thereon in the sum of $1,312.58. Plaintiff thereupon filed a motion for new trial and has perfected this appeal from the overruling thereof.

At the time of the accident the bus that was damaged was owned and being operated by the Interstate Transit Lines, doing business as Overland Greyhound Lines. Whatever rights the Interstate Transit Lines had against appellee by reason of the accident were acquired by appellant, as of January 1, 1952, when appellant's purchase of the Interstate Transit Lines became effective. Admittedly its rights thereunder were subject to any and all defenses and claims, if any, which appellee might have thereto.

The accident happened about 10:45 a. m. on June 1, 1950, on U. S. Highway No. 275, also known as the West Dodge road. It happened about one-half mile east of the Ten Mile corner located west of Omaha which is the intersection of the Ten Mile road and U. S. Highway No. 275. At the time of the accident L. M. Woods, then

assistant superintendent of the Interstate Transit Lines, was giving the bus a trial run to see if it had any water or oil leaks. This was necessary because a factory rebuilt motor, transmission, and radiator had just been installed therein. It was not the intention of the driver of the bus to pick up any passengers during this trial run nor did he do so. In making the test run the bus was driven north on the Ten Mile road and then onto the West Dodge road at the point where the Ten Mile road and West Dodge road intersect. It proceeded to travel east toward Omaha in the south eastbound lane. This highway has a 42-foot paved surface with four lanes, two for eastbound and two for westbound traffic. As the bus entered onto the highway the driver of appellee's truck saw it do so. At that moment the truck, which was traveling east on the Dodge Street road, was just east of the main entrance to Boys Town. This point is about one-fourth mile west of the intersection. The truck, a K-8 International, was a "semi" with a dump type body constructed on the trailer for the purpose of hauling sand and gravel. At the time the truck was hauling about 11 tons of gravel. Both bus and truck proceeded east in the south lane until the accident occurred at a point just west of the crest of a long gradual uphill grade which starts at a point about 500 feet east of the intersection. The accident occurred when the right front of the truck ran into and against the left rear of the bus, damaging both vehicles. The point of the impact was just south of the north line of the south lane for eastbound traffic. The foregoing is a general summary of when, where, and how the accident happened. Later in this opinion we shall set forth the evidence more in detail as it relates to the several errors assigned and herein discussed.

Appellant's counsel complains of several instructions given by the trial court and contends the giving thereof was error and prejudicial to his client's rights. The first of these is instruction No. 6 which, among other

things, placed upon appellant the burden of establishing by a preponderance of the evidence the nature and extent of the damage to the bus when, as a matter of fact, the parties had stipulated thereto.

We said in Zancanella v. Omaha & C. B. St. Ry. Co., 93 Neb. 774, 142 N. W. 190: "The trial court should, as far as possible, eliminate all superfluous matters, and submit to the jury only the controverted questions of fact upon which their verdict must depend. To submit to the jury matters not in issue, or to submit issues that are so wholly unsupported upon the one side or so conclusively established upon the other that reasonable minds could not differ with regard to them, is erroneous."

And in Myers v. Willmeroth, 151 Neb. 712, 39 N. W. 2d 423, we said: "The trial court should eliminate all matters not in dispute and submit to the jury only the controverted questions of fact upon which the verdict must depend." See, also, Bee Building Co. v. Weber Gas & Gasoline Engine Co., 86 Neb. 326, 125 N. W. 518.

In view of the parties' stipulation the issue of damages should not have been submitted to the jury. The trial court should have instructed the jury that the amount of the damages had been admitted. But every error does not necessarily result in prejudice so as to require a reversal. Instruction No. 7 given by the court submitted the same issue with reference to the appellee's right to recover on its counterclaim, although a similar stipulation had been entered into by the parties fixing the amount thereof. It is apparent the jury was not confused by these instructions for when it found for the appellee on the counterclaim it fixed the amount of the verdict in the exact amount that the damages to the truck had been stipulated to be. In view thereof we find the giving of these instructions to have been error without prejudice.

Appellant complains that the court was in error in giving instructions Nos. 12 and 12½. These instructions are as follows:

No. 12. "You are instructed that under the laws of the State of Nebraska, it is required that no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal, as hereinafter stated."

No. 12½. "You are instructed that under the laws of the State of Nebraska a person is bound to give a warning of his intention to stop a motor vehicle upon the highway by giving a hand signal and if a hand signal cannot be seen, then by an appropriate signaling device which would warn vehicles traveling of the intention of the driver of said vehicle to stop said vehicle."

With reference to the duties of a driver in this regard the statutes then in force, so far as here material, provided as follows:

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal * * * to the driver of any vehicle immediately to the rear, when there is opportunity to give such signal, * * *." § 39-7,111, R. R. S. 1943.

"The signals required by sections 39-7,111 * * * shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the Department of Roads and Irrigation, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and the rear of such vehicle the signals must be given by such a lamp or device." § 39-7,116, R. R. S. 1943.

"All signals required by sections 39-7,111, * * * to be given by hand and arm shall be given from the left side of the vehicle in the following manner and such signal indicated as follows: (1) Left turn, arm and hand extended horizontally; (2) right turn, hand and arm extended upward; (3) stop or decreased speed, hand and arm extended downward." § 39-7,117, R. R. S. 1943.

It will be observed that the statute does not provide that one is bound to give a hand signal but, on the contrary, provides that such signal may be given either by

means of the hand and arm, or by a signal lamp or signal device of a type approved by the Department of Roads and Irrigation. This has particular application here for the driver of the bus admitted he gave no hand signal when he slowed down to stop but depended entirely on the signal lamps on the rear of the bus, which lamps were automatically activated by the application of the foot brake. These lamps were located on each side of the rear about 4 feet from the level of the road. We find instruction No. 12½ placed a positive duty on the appellant which the law does not require and that, under the circumstances here shown, was prejudicial.

The court also gave instructions Nos. 15, 16, and 17 dealing with the same subject. These instructions, particularly No. 17, properly discuss the duties of appellant and appellee in this regard. It is true that we should consider the instructions given by the court as a whole to see if it can be said they properly submitted the issues to the jury. If they do then prejudice does not result merely because there may be error in one or more of the instructions given. But here, under the circumstances shown, we think the following principle controls: "Where two conflicting instructions are given on a question, one containing an incorrect, and the other a correct, statement of the law, the latter will not cure the former." Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N. W. 2d 609.

And, as stated in Harsche v. Czyz, 157 Neb. 699, 61 N. W. 2d 265: "An instruction which conflicts with the propositions of law properly and correctly stated in another instruction in the same charge on a vital issue of fact and tends to mislead or confuse the jury in deliberating on conflicting evidence is erroneous and prejudicial."

Appellant also complains of instruction No. 18 given by the court as placing a positive duty on the driver of the bus to avoid the accident.

By this instruction the court advised the jury that:

"You are further instructed that if you find from the evidence in this case that the plaintiff was able to avoid the accident, yet failed to do so, then your verdict should be for the defendant."

We think this instruction came very close to directing a verdict for the appellee and was clearly prejudicial. The rule in this regard has often been announced by this court.

In Patterson v. Kerr, 127 Neb. 73, 254 N. W. 704, we said: "One is required only to have his car under such reasonable control as to be able to avoid a collision with other vehicles whose drivers exercise due care. Complete control which is such as will prevent collision by the anticipation of negligence on the part of another in the absence of warning or knowledge is not required."

We think what was said in Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767, has application here. Therein we said: " 'Reasonable control' by drivers of motor vehicles is such as will enable them to avoid collision with other vehicles operated without negligence in streets or intersections, and with pedestrians in the exercise of due care; but 'complete control' such as will only prevent a collision by anticipation of negligence or illegal disregard of traffic regulations, in absence of notice, warning or knowledge, is not required by the laws of Nebraska. The instruction given by the trial court in the present case imposed upon defendant too high a degree of control under the circumstances." See, also, Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436.

In view of what we have already said the appellant is entitled to a new trial but before reversing the judgment for that purpose we shall briefly discuss the question raised as to the sufficiency of the evidence to sustain the verdict as a matter of law. The rule controlling is that: "The verdict of a jury on conflicting evidence will not be disturbed on appeal unless it is clearly wrong." Kohrt v. Hammond, 160 Neb. 347, 70 N. W. 2d 102.

Before entering into a discussion of the evidence we shall review two statutes cited by appellee. These statutes are apparently cited for the purpose of showing that, under the circumstances here shown, they created some duty on the part of the driver of the bus with which he failed to comply. Section 39-724, R. R. S. 1943, relates, among other things, to the duty of the driver of any motor vehicle carrying passengers for hire to stop the vehicle before crossing at grade any track or tracks of a railroad, a situation not here involved. This statute does require vehicles used for carrying passengers for hire, a service in which the bus was ordinarily used, be equipped with electric signal stop lamps, red in color, located on the rear of the vehicle at a height of not less than 42 inches nor more than 60 inches above the surface of the highway and that the device shall be operated independently by a control in the driver's compartment of the vehicle. The evidence shows the bus was so equipped and that the type of signal stop lamps used on the bus for this purpose had been approved by and complied with the specifications adopted by the Department of Roads and Irrigation of the State of Nebraska. We do not think, because the statute provides, "all such vehicles shall be equipped with an electric signal stop lamp, red in color, located on the rear of the vehicle," that such lamps are required to have the word "stop" thereon unless the specifications adopted by the Department of Roads and Irrigation so provide. The evidence shows no such requirement.

Appellee also cites section 39-757, R. R. S. 1943, which provides: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; Provided, in no event shall any person park or leave standing any vehicle, whether attended or un-

attended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway."

We think this statute was not intended to prohibit a momentary stoppage on the paved portion of the highway under proper circumstances for a normal and reasonable purpose. A like statute was fully, and we think correctly, analyzed in Peoples v. Fulk, 220 N. C. 635, 18 S. E. 2d 147. Therein the court said: "The temporary stop of the bus on the hard surface portion of the highway to take on a passenger did not constitute a violation of sec. 123(a), ch. 407, Public Laws 1937, which provides that 'no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway.'

"The clause 'whether attended or unattended' limits the meaning of the word 'park' as well as of 'leave standing.' The two terms, as thus limited, are synonymous. A vehicle which is left standing is parked and a vehicle which is parked is left standing. Neither term includes a mere temporary stop for a necessary purpose when there is no intent to break the continuity of the 'travel.'

"'Park' or 'leave standing' means something more than a mere temporary or momentary stop on the road for a necessary purpose. S. v. Carter, 205 N. C., 761, 172 S. E., 415; Stallings v. Transport Co., 210 N. C., 201, 185 S. E., 643, 42 C. J., 614, 2 Blashfield Cyc. Auto L. & P., 332, and cases cited; Billingsley v. McCormich Transfer Co., 228 N. W., 424 (N. D.); Axelson v. Jar-

dine, 223 N. W., 32 (N. D.); Dare v. Bass, 224 Pac., 646; Kastler v. Tures, 210 N. W., 415 (Wis.); Henry v. S. Liebovitz & Sons, 167 Atl., 304 (Pa.); American Co. of Ark. v. Baker, 60 S. W. (2d), 572 (Ark.); Dolfosse v. Oil Co., 230 N. W., 31 (Wis.). Starting and stopping are as much an essential part of travel on a motor vehicle as is 'motion.' Stopping for different causes, and according to the exigencies of the occasion, is a natural part of the 'travel.' The right to stop when the occasion demands is incident to the right to travel. Fulton v. Chouteau County Farmers Co., 32 Pac. (2d), 1025; Morton v. Mooney, 33 Pac. (2d), 262." See, also, Leary v. Norfolk Southern Bus Corp., 220 N. C. 745, 18 S. E. 2d 426; Fritz v. York Motor Express Co., 358 Pa. 398, 58 A. 2d 12; Naylor v. Dragoon, 116 Vt. 552, 80 A. 2d 600; American Co. of Arkansas v. Baker, 187 Ark. 492, 60 S. W. 2d 572.

James Million, driver of the truck, testified to the following: That he saw the bus enter the highway at the intersection of it with the Ten Mile road; that he was then on the highway traveling east at a point just east of the main entrance to Boys Town; that the main entrance to Boys Town is about one-fourth mile west of the intersection; that he caught up with the bus some 800 feet east of the intersection and then continued to travel about 100 feet behind it; that he was then traveling from 35 to 40 miles an hour; that both bus and truck continued to travel in the south lane of travel for eastbound traffic; that the bus just stopped; that he saw no signals indicating such intent on the part of the driver of the bus nor was he aware the bus was slowing down for that purpose although he was looking ahead and watching the bus; that when he noticed the bus had stopped it was about 50 feet ahead of him; that he estimated it would take a distance of about 100 feet to stop the truck at the speed he was traveling upgrade; that he applied the brakes and turned to the left but was unable to avoid hitting

the bus; and that he was not able to turn left into the passing lane for eastbound traffic because he observed, in his rear view mirror, that a semitrailer truck, loaded with hay, was about to pass him.

There were skid marks made by the tires of the truck from the point of impact for a distance of about 24 feet 5 inches to where the truck stopped on the highway. There were no skid marks of the bus tires, it being driven ahead some 50 or 60 feet from the point of impact.

We have often said: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision. See, Buresh v. George, supra; Huston v. Robinson, 144 Neb. 553, 13 N. W. 2d 885.

"The basis for this rule is stated in Buresh v. George, supra, as follows: 'The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it.'" Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250.

In regard to this duty we have held: "There is nothing that will excuse his failure to see what was plainly in sight if he had maintained a proper lookout." Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106.

Accepting the truck driver's testimony, as we must for testing the sufficiency of the evidence to sustain the verdict, we think he was guilty of negligence as a matter of law. Admittedly he saw the bus at a considerable distance. The day was bright, the sun was shining overhead, and the pavement was dry. He was at all times able to view the movements of the bus and he was duty bound to look and observe its movements. That the bus must have been slowing down to stop, as the

bus driver said it was, seems self evident from all the circumstances shown and there is no evidence from which it could be said that the slowing down was sudden or abrupt. In fact the evidence, without dispute, shows it was gradual. It seems to us that the truck driver was negligent in not observing this fact and acting accordingly and that his negligence was a proximate cause of the accident. It may be that when he finally became aware of the bus having stopped he was in a position from which he could not extricate himself, but it was a situation of his own making. In this regard we have not overlooked our holding in O'Brien v. J. I. Case Co., 140 Neb. 847, 2 N. W. 2d 107, but that was a situation in which the jury could find there was a sudden and abrupt stop which is not the situation here.

The driver of the truck, who stated he was looking straight ahead and watching the bus, testified he never saw any signal that indicated it was going to stop. On the other hand the driver of the bus said such a signal was given. The occasion for the bus stopping was to advise a lady who was signaling to get on it that the bus was not carrying passengers. This lady was standing some 8 or 9 feet south of the paved portion of the highway and signaling with her hand indicating she wanted to get on the bus. The driver of the bus and his assistant, the latter being a mechanic who was riding with him, testified they saw this lady at some distance and then started to slow down in order to stop to so advise her. The driver testified he applied the brakes. The driver and his assistant both testified the accident occurred before the bus had come to a stop. The bus driver admitted he gave no hand signal of his intention to stop nor did he look in the rear view mirror to see if any vehicles were behind him but depended entirely on the rear stop lamps being activated by his use of the brakes. He admitted he never saw the truck until after the accident. This presented an issue of

fact. The duty of a driver to give a signal under these circumstances is created by statute. See § 39-7,111, R. R. S. 1943. See, also, O'Brien v. J. I. Case, *supra*.

There is evidence from which a jury could find this duty was not complied with on the part of the bus driver and that he was negligent in that respect. We think the evidence is sufficient, under the circumstances disclosed by the record, to take the question of contributory negligence of the bus driver to the jury on the issue of appellant's right to recover.

We therefore reverse the judgment and remand the cause for a new trial in accordance herewith.

REVERSED AND REMANDED.