Newell Stanley, Appellee, v. Benjamin Ebmeier et al.,
Appellants.

90 N. W. 2d 290

Filed May 31, 1958. No. 34376.

*Philip H. Robinson* and *Hutton & Hutton,* for appellants.

*Sherman W. McKinley, Jr.,* and *McEntaffer & Fachman,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The causes of action asserted by appellee were in substance as follows: Benjamin Ebmeier conducted business as Home Oil Company. Gerald Dowling was at the times referred to an agent and employee of Benjamin Ebmeier, was engaged in the business of his principal and employer, and was acting within the course of his employment. Appellee was at about 9:30 a. m., April 25, 1955, operating a 1950 Chevrolet pick-up truck in a westerly direction on U. S. Highway No. 20, hereafter referred to as Highway No. 20, about 1 mile east of the intersection of Nebraska State Highway No. 116 with Highway No. 20 in Dixon County. He intended to make a left-hand turn on an intersecting road. He extended his left arm through and out from the left window of his vehicle as a left-hand turn signal and decreased the speed of his vehicle to accommodate and facilitate the turn he intended to make. The rate of the speed of the vehicle he was operating was about 10 miles per hour at the time of the collision of a truck owned by Benjamin Ebmeier and operated by Gerald Dowling with the pick-up truck driven by appellee. Gerald Dowling was operating a 1952 Chevrolet 2-ton truck of his employer on Highway No. 20 at the time and place aforesaid at a speed of about 60 miles per hour. As appellee was approaching the intersection upon which he intended to turn to the left or south but while he was still on his right or north side of Highway No. 20,

Gerald Dowling operated the truck he was driving across Highway No. 20, into and upon the south lane of it, and collided with a Buick automobile moving towards the east and driven by Joseph Carlson on Highway No. 20. Immediately thereafter the truck operated by Gerald Dowling collided with the rear of the pick-up truck in which appellee was traveling towards the west in and upon the north or right-hand lane of Highway No. 20. The highway was paved. The highway extended east and west. The pavement was dry, the weather was clear, and it was daylight. The collision of the 1952 Chevrolet truck with the pick-up truck of appellee was the proximate result of the negligence of appellants as follows: The operation of the truck was at an excessive rate of speed and at a greater speed than was reasonable under the circumstances then existing; failure to keep a proper lookout for traffic on the highway; failure to operate the vehicle in such a manner that it could be stopped within the assured clear distance ahead; and operating the vehicle on and in the left lane of the highway when there was traffic moving therein from the west and there was not time or distance sufficient to pass the vehicle of appellee. The collision of the vehicles caused severe injuries, permanent disability, and great damage in specified amounts to the appellee for which judgment was asked against appellants. The second cause of action was for the damage caused to the pick-up truck of appellee and judgment was sought against appellants for it.

The causes of action alleged by appellee were each denied by appellants and they asserted that the collision complained of by appellee and the damages alleged to have resulted therefrom were proximately caused by the negligence of appellee. The reply thereto was a denial of the new matter of the answer.

A trial of the issues resulted in a verdict for appellee on each of the causes of action and a judgment was rendered thereon for appellee and against appellants. The latter, at

the close of the evidence, requested the court to decide the case as a matter of law and to render a judgment for appellants. Appellants, after the entry of judgment upon the verdict, made a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial of the case. The motion was denied and appellants have pursued this appeal.

It is necessary to determine if the proof is sufficient to sustain the finding of the jury in favor of appellee. The evidence and reasonable inferences therefrom must be considered most favorably to him. Calvert v. Miller, 163 Neb. 501, 80 N. W. 2d 123. All disputed issues of fact must be considered resolved by the jury favorably to appellee. James v. Hogan, 154 Neb. 306, 47 N. W. 2d 847; Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

The accident which was the occasion of this litigation occurred about 9:30 a. m., April 25, 1955, on Highway No. 20 about 160 feet east of the intersection of Highway No. 20 and a north-and-south road about 4 miles from Dixon. Highway No. 20 was paved with concrete. It was 20 feet wide, in good condition, and extended east and west. It intersected a north-and-south road about 150 or 160 feet west of the place of the accident. It was a clear, dry day and during daylight when the collision took place. The parties were advised as to Highway No. 20, the intersecting roads, and the environment generally.

Appellee went to and upon Highway No. 20 from his farm 1,767 feet east of the intersection last mentioned. He was traveling in and operating a 1950 Chevrolet pick-up truck, hereafter referred to as the pick-up. His vehicle was in good mechanical condition. The rear stop-light lamps, activated by the use of the brakes of the vehicle, were in good operating condition and performed as they were intended to do. The highway from where he entered it was upgrade for 1,112 feet. The grade of it was 3 percent. When appellee stopped before

going upon the highway he saw an oil truck approaching on Highway No. 20 from the east about 1,000 feet from appellee. This was the truck which collided with appellee and it was owned by Benjamin Ebmeier, one of the appellants, hereafter called appellant, and operated by Gerald Dowling, one of the appellants and an employee of Benjamin Ebmeier. Gerald Dowling will be hereafter identified by the name Dowling. Appellee traveled west at a speed of 25 to 30 miles per hour up the hill to its top or crest, a distance of 1,112 feet west from where he entered Highway No. 20. As he was starting down the hill, which had a grade of 5.67 percent, he lightly pressed the brake pedal of his vehicle and reduced his speed moderately. He did this because he intended to turn to the left or south at the intersection he was traveling towards which was 655 feet west of the crest or top of the hill over which he had just traveled. His mail box was a short distance south of the intersection on the north-and-south road. He intended to stop there and get his mail.

Appellee met and passed a flat-bed truck, a bread truck, and a Buick automobile traveling towards the east. The flat-bed truck had a brooder house on it which was about 1 foot wider than the bed of the truck and extended over the center line of the highway. He met this truck near the top of the hill. The bread truck was about two-thirds of the way up the hill and the Buick automobile was about 200 feet east of the intersection. Appellee had just passed the Buick automobile when his vehicle received a terrific jar. He was jostled and thrown about in the cab of his truck and experienced a sensation of falling. The contact with the pick-up was at its left rear. Appellee was thrown from his pick-up through space and came to rest in the center of the north-and-south road approximately 20 feet north of the north line of Highway No. 20. He received serious and permanent injuries. Appellee at all times after he entered Highway No. 20 operated his truck on the north or right

half of the highway until it was in collision with the oil truck operated by Dowling. He did not at any time cross the center line of the highway with his pick-up. The speed of his vehicle immediately before it was collided with was 10 to 15 miles per hour. Appellee, before his pick-up was hit, gave a left-turn signal with his left hand and arm extended out of the left window of the cab of his vehicle. There was a clear, unobstructed view by any traveler on Highway No. 20 going west from the top of the hill to and beyond the first intersection a distance of more than 600 feet.

The Buick automobile going east, which appellee passed as he was going down the hill towards the intersection, was driven by Joseph Carlson. There was a bread truck in front of the Buick, a truck with a building on it preceded the bread truck, and these three vehicles were traveling about 15 miles per hour. When Carlson saw appellee the former was 125 to 150 feet up the hill from the intersection west of where the accident happened. He then saw a Home Oil Company truck, which will be spoken of as oil truck hereafter. It was about 230 feet east of the intersection. It was then in the north lane of Highway No. 20. It then swerved back and forth over the highway and moved towards the Buick automobile. Carlson accelerated the speed of the Buick and got to the south or right until the front wheel of it was off the pavement to the south. The oil truck collided with the Buick immediately back of its left front door. The Buick skidded or was pushed for a distance by the front bumper of the oil truck and then there was a second crash. The Buick was probably 150 feet or slightly more east of the intersection when the oil truck first collided with it. The oil truck was about 125 feet east of the pick-up of appellee when Carlson first saw it. He observed that Dowling, the operator of the oil truck, had applied its brakes and was attempting to decrease its speed before it collided with the Buick. The speed

of the oil truck when Carlson first saw it west of the top of the hill was 40 to 50 miles per hour.

The operator of the truck which was transporting the brooder house met and passed appellee as he came over the crest of the hill and he was, according to the trucker, traveling at 15 to 20 miles per hour. The operator of the truck met the oil truck 400 or 500 feet east from the crest of the hill and the speed of that truck was 40 to 50 miles per hour. The bread truck was west of the flat-bed truck. The driver of the bread truck first saw appellee when he was a short distance west of the crest of the hill proceeding west in the north lane of Highway No. 20 at a speed of 10 to 15 miles per hour. When the operator of the bread truck was about 50 feet east of the intersection he saw the oil truck traveling west come over the hill at a speed of between 40 and 45 miles per hour. The bread truck was about halfway up the hill east of the intersection when it met the oil truck and they passed. The oil truck swerved to the left or south in an attempt to avoid colliding with the pick-up and struck the Buick automobile which was following the bread truck while the oil truck was partly at least in the south lane of the highway. The oil truck then swerved back toward the north lane of the highway and collided with the back end of the pick-up. The Buick automobile was south of the center of the pavement when it was hit and the pick-up was in the north lane of the highway when it was struck by the oil truck. There were skid marks on the pavement made by the tires of the oil truck from a point 29 feet east of and extending west to the place where the oil truck collided with the pick-up. The oil truck came to rest 200 feet west of the situs of the accident.

A witness testified that Dowling told him at the scene of the accident that appellee had given a signal; that Dowling had taken his eyes from the road to look at the flat-bed truck; that when he turned back he realized that appellee had decreased his speed; that Dowling put

on the brakes of the oil truck but they did not seem to work just right; and that he, Dowling, could not avoid the truck he was operating from colliding with the pick-up of appellee.

Dowling testified he entered Highway No. 20 one-half mile east of where appellee went upon this highway the morning of the accident. The brakes of the truck he was using were then operating properly. When he was a considerable distance east of the home of appellee Dowling saw appellee drive down the lane of his farm and enter Highway No. 20. He proceeded westward at a speed of 10 to 12 miles per hour and increased it to 25 to 30 miles per hour. The speed of the oil truck Dowling was operating was 40 to 45 miles per hour. He saw the pick-up go over the hill to the west and it was 200 or 300 feet ahead of the oil truck. When the witness got to the top of the hill appellee was 200 feet to the west. The witness reduced the speed of the oil truck to 30 miles per hour. He saw and passed the truck on which the brooder house was being transported. As he approached the bread truck he observed that appellee had suddenly reduced his speed. Dowling attempted to go around the pick-up of appellee. He then saw the Buick automobile only 50 or 75 feet behind the bread truck. He thought he could drive the oil truck between the Buick and the pick-up but decided that he could not. He turned the oil truck back, obviously towards the north, sideswiped the Buick automobile, and he then collided with the rear of the pick-up. The contact with the Buick removed the chrome from the door, made a long dent in it, and took off the front part of the back fender. The right front of the oil truck hit the rear of the pick-up. Appellee gave no signal that he was slowing up or going to stop, according to Dowling. When Dowling attempted to pass appellee he could not see the south lane of the highway to the west or the traffic moving thereon towards the east. When he drove the oil truck into the south lane of the highway he then saw the Buick

automobile. When the oil truck was passing the bread truck appellee was about 100 feet west of it. Dowling said he saw appellee reduce his speed. Dowling then applied the brakes on the oil truck and attempted to pass the pick-up and avoid hitting it. He failed in both objectives.

The findings of the jury favorable to appellee are supported by the evidence. If there is evidence which will sustain a finding for the litigant who has the burden of proof in a cause, the trial court may not disregard it and decide the case as a matter of law. Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496; Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683; Larsen v. Omaha Transit Co., 165 Neb. 530, 86 N. W. 2d 564.

The charge of appellants that appellee was guilty of contributory negligence which was the proximate cause of the collision of the oil truck with the pick-up of appellee is based on the failure of appellee to look back or to observe where the oil truck was behind him as the vehicles traveled down the hill to the place of the accident, and that appellee suddenly reduced the speed of his pick-up and failed to give a signal of his intention to stop or to suddenly reduce his speed. Dowling, the operator of the oil truck, saw the appellee enter Highway No. 20 when Dowling was a considerable distance east of that place. Appellee produced evidence the distance was about 1,000 feet and it was not disputed. Dowling had a clear, unobstructed view of appellee as he proceeded west to the top of the hill a distance of more than 1,100 feet from where appellee entered the highway. When Dowling passed the top of the hill he was about 200 feet behind appellee and Dowling had a clear view of appellee until his vehicle was collided with by the truck operated by Dowling, a distance of about 500 feet. The speed of appellee's vehicle when he reached the top of the hill was 25 to 30 miles per hour. This was decreased to 10 to 15 miles per hour at the time of the collision. Dowling was traveling 40 to 45 miles

per hour and he only claims he reduced his speed to 30 miles per hour. Appellee traveled only in the north or right lane of the highway. He did not stop his truck. He had no reason to do so. He was then 150 feet or more east of the intersection traveling at the moderate speed of 10 to 15 miles per hour and he did not intend to stop when he reached the intersection. His intention was to turn to the left and go south on the north-and-south road. He did not reduce the speed of the pick-up suddenly. He put the brakes on lightly and reduced the speed gradually and moderately from 25 to 30 miles per hour to 10 to 15 miles per hour. Dowling saw that the speed of the pick-up was being reduced by appellee when Dowling approached the bread truck going east and appellee was at that time at least 100 feet to the west of it. Dowling made no effort to reduce his speed and avoid an accident with either the Buick automobile or the pick-up or both of them which were west of him. He instead elected to pass appellee, drove his truck in the south lane of the highway, collided with the Buick automobile, and then turned his oil truck to the north and caused it to collide with the pick-up of appellee.

The statutory provision that the operator of a motor vehicle shall not stop or suddenly decrease the speed of the vehicle without giving an appropriate signal to the driver of any vehicle immediately to the rear has no application to this case. The charge of appellants that negligence of appellee was the proximate cause of the collision of the vehicles complained of by him and any injuries and damages resulting therefrom is wholly unsupported by proof. The trial court correctly denied the motion of appellants for a judgment notwithstanding the verdict or, in the alternative, for a new trial.

Instruction No. 1 was a statement in reference to the contents of the petition. The petition contained a statement that appellee was traveling on Highway No. 20 and intended "to make a left hand turn onto an intersecting dirt road." The instruction disregarded this

statement and appellants complain that it thereby "entirely kept from the jury a very important fact admitted in the pleadings—*that plaintiff was going to make a left hand turn.*" This instruction was not the expression of any rule of law. It was an informative summary of the petition. The uncontroverted evidence of appellee supplied the jury with the information that he intended to make a left-hand turn at the intersection: "I intended to make that lefthand turn." If there was error in the omission it was not prejudicial. The jury had the fact that appellee intended to turn left at the intersection and to go to his mail box.

The trial court gave by instruction No. 10 what it considered to be relevant rules of the road. These included the ones concerning a vehicle overtaking and passing another vehicle on a public highway. Appellants do not complain that there was any incorrect statement of law in the instruction. They object that the effect of it was to inform "the jury as a matter of fact that this was an overtaking and passing case" and deprived the jury of deciding whether the rear-end collision with the pick-up truck of appellee was due to sudden reduction of speed by him, excessive speed by appellants, or a passing case in which different rules of law would apply; and that the charge to the jury did not inform it that if this was not a passing case but an emergency situation then the requirements of law were that if Dowling demeaned himself as an ordinary, careful, and prudent person would have done under the circumstances, he was not negligent even though he committed an error of judgment.

If instruction No. 10 advised the jury that this was an "overtaking and passing" case it stated a fact abundantly shown by and confirmed in the record. Dowling, as he was following appellee down the hill towards the place of the collision, approached the bread truck and attempted to pass the pick-up driven by appellee. The exact words of Dowling are: "Then is when I attempted

to go around Mr. Stanley. As I attempted to go around there I saw there was a Buick car behind this bread truck." Dowling then thought he would go between the Buick and the pick-up of appellee but he desisted from this desperation undertaking and turned the oil truck towards the north lane of the highway, and collided with the Buick automobile and then with the pick-up of appellee. This is the testimony of Dowling, the driver of the oil truck. It is not disputed. This instruction did not deprive the jury of anything it could properly have considered or decided in the case. The cause of the collision ceased to be uncertain after Dowling testified. His testimony is in substance a confession of negligence on his part.

The instruction was wholly foreign to what appellants refer to as an "emergency situation." The record shows that any emergency that existed was created by the unwarranted conduct of Dowling and that his negligence existed throughout until the collision happened and the damage was done. There was no plea or mention of a sudden emergency by appellants before their brief suggested it. The doctrine of sudden emergency cannot be invoked in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed and it cannot be successfully invoked by one who has brought that emergency upon himself by his acts or who has not used due care to avoid it. Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491; Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669; Dryer v. Malm, 163 Neb. 72, 77 N. W. 2d 804. Instruction No. 10 is not subject to the objections made to it by appellants.

The assault on instruction No. 12 that it directed the attention of the jury to Dowling and away from the acts of appellee; that it defined with meticulous care the duties of appellants; and that it gave slight mention or none at all of the obligations of appellee as the operator of a motor vehicle has no merit. The instruction was

general concerning duties of the operator of a motor vehicle and it applied to appellee and to Dowling alike. It made no mention of either of them and no distinction between them; in fact, it was quite universal as it spoke of the duties of a driver of a motor vehicle to keep a proper lookout etc. There is no claim that it contained any incorrect matter and appellants made no request for an enlargement of it. Its inclusion in the charge to the jury was not improper.

Appellants claim error because of instruction No. 13. The language of it is: "It is the duty of the driver of a motor vehicle to maintain 'reasonable control' of his automobile. Reasonable control is such as would enable him to avoid collisions with other vehicles, operated without negligence. 'Complete Control' such as will prevent collisions only by anticipating the negligence or illegal disregard of traffic regulations by others in the absence of notice, warning or knowledge thereof is not required." The instruction has in substance the approval of this court. Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., *supra*.

The oil truck was operated by Dowling on Highway No. 20 for about 2,600 feet before the collision of the vehicles with the knowledge that appellee was preceding him traveling in his pick-up in the right or north lane of the highway towards the west. The view of appellee and his pick-up by Dowling was complete and continuous except as temporarily cut off by the hill over which they traveled. When they were both on the west of the hill there were about 200 feet between them. They traveled for about 500 feet on the west of the hill. When Dowling decided to make an effort to pass appellee the pick-up of appellee was about 100 feet west of the oil truck operated by Dowling. Appellee was then traveling at a speed of 10 to 15 miles per hour. In Bramhall v. Adcock, 162 Neb. 198, 75 N. W. 2d 696, this court said: "It is a general rule, subject to exceptions not applicable to this case, that it is negligence as a matter of law for

a motorist to drive an automobile on a public highway, at any time, at a speed or in such manner that it cannot be stopped or its course changed in time to avoid a collision with an object or obstruction discernible within his range of vision in the direction he is traveling. * * * The basis of the foregoing general rule is that the driver of an automobile is legally and mandatorily obligated to keep such a lookout that he can see what is plainly visible before him and to operate his automobile in such a manner that he can stop it and avoid collision with any object in front of him." See, also, Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., *supra;* Guerin v. Forburger, 161 Neb. 824, 74 N. W. 2d 870; Dryer v. Malm, *supra.*

The judgment should be and it is affirmed.

AFFIRMED.