KEITH S. SCHWARTZ AND KENNETH P. SCHWARTZ, EXECUTORS OF THE ESTATE OF JOSEPH SCHWARTZ, DECEASED, APPELLANTS, V. B. R. HIBDON, FIRST AND REAL NAME UNKNOWN, DOING BUSINESS AS OIL FIELD DOZER SERVICE, ET AL., APPELLEES.

116 N. W. 2d 187

Filed June 29, 1962. No. 35266.

Heaton & Heaton and Leon A. Sprague, for appellants.

Halcomb, O'Brien & Everson and Harry R. Meister, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action for wrongful death as a result of a rear end collision. The trial court sustained defendants' motion for a directed verdict at the close of plaintiffs' evidence. Plaintiffs' motion for new trial was overruled, and plaintiffs appeal.

The action was brought by the appellants, who are the executors of the estate of Joseph Schwartz, deceased, for

the exclusive benefit of the next of kin who sustained pecuniary loss. The executors will be hereinafter referred to as appellants. The defendants and appellees are B. R. Hibdon, first and real name unknown, doing business as Oil Field Dozer Service, and Kenneth H. Thompson. They will be hereinafter referred to as Hibdon, Thompson, or appellees.

The parties stipulated that Hibdon was the owner of the equipment being driven by Thompson, and that Thompson was one of Hibdon's employees on September 28, 1960. There is no question but that at all times pertinent herein the relationship of master and servant existed. The equipment driven by Thompson was a 190 four-wheel International truck, which was pulling an eight-wheel Fruehauf lowboy trailer, which trailer was carrying an HD9 Allis-Chalmers tractor mounted with a bulldozer blade. The combined weight of the tractor and equipment was 36,000 pounds.

Thompson was the only eyewitness to testify. From his testimony we determine the facts to be that between 9 and 10 o'clock a.m. on September 28, 1960, Thompson was driving this equipment east on U. S. Highway No. 30 at about 40 miles per hour. When he was at a point he estimates to be 1,000 feet west of the intersection of highway No. 30 and a north and south county road 2 miles west of Potter, Nebraska, he observed Joseph Schwartz, hereinafter referred to as the deceased, driving a farm tractor pulling a pickup, approaching a stop sign on the county road. Thompson testified deceased did not bring the equipment to a stop at the stop sign protecting the highway, but, turning the equipment onto highway No. 30, he proceeded east. He further testified that deceased at all times drove the equipment to the right of the centerline; that there was nothing to obstruct his vision; and that he observed the deceased, who was traveling at a speed of 5 to 7 miles per hour, from the time he came onto the highway until the impact. The impact occurred at a point at least 700 feet

east of the intersection of highway No. 30 and the county road.

When the deceased came onto the highway Thompson slackened his speed until he was down to 20 miles per hour. There was a car between him and the deceased, which passed the deceased. After Thompson reached the intersection of highway No. 30 and the county road, a milk truck, which had been behind his truck, passed him and then passed the deceased. When it returned to its own lane of traffic in front of the deceased, Thompson looked in his rearview mirror and, not seeing anyone behind him, started to pull out to pass the deceased. He swung out at 20 miles per hour and started gaining speed. When he was a "couple feet" over the centerline, he again looked in his rearview mirror and saw a car in the westbound lane to his rear, overtaking him and attempting to pass, so he sounded his horn and cut right back. He was then 50 to 75 feet from the deceased. He could not stop so he headed for the ditch, and the left end of his front bumper caught the center of the tailgate of the pickup, pushing it loose and north across highway No. 30. The farm tractor rolled completely over and the truck came to a stop, with its front bumper on the rear wheels of the farm tractor.

It was Thompson's testimony that at the time of the impact the truck was practically off the pavement but the part which hit the pickup was on the pavement. The deceased had made an attempt to turn off the pavement onto the right shoulder. The shoulder on both sides of highway No. 30 was 10 to 12 feet wide.

The deceased was thrown off the tractor by the impact and had fallen on the pavement. He was unconscious at the scene and much of the time until his death in the hospital at Sidney, Nebraska, at 11:15 o'clock the next night.

Thompson, in his deposition before the trial, described his cutting back as follows: " 'Then I met the westbound traffic and let them clear, and the traffic behind me

pass, and by then I was down to approximately 20 miles an hour—I had to gear down—and I swung out to start to pass, checked the rear-view mirror first, and swung out to pass, checked the mirror again and a car come from behind, and I cut back in again and put on the brakes and pulled the air horn, and I saw I couldn't stop, and I cut for the ditch, and the shoulder there is about 12 feet wide and fairly gentle sloping to the ditch; I figured I could ditch the truck and trailer rather than hit the back of the pick-up, and about that time, evidently he had heard the air horn, and he cut to the right.' "

Thompson also testified that because of the bulldozer on the trailer he had a blind spot so that his vision to the rear was obstructed directly behind him for approximately 150 feet, but that a car would have to be in the exact position for him not to see it with one of his rearview mirrors. In this connection, we note that when Thompson saw the car attempting to pass, it was out in a passing position in the westbound lane behind him. It seems that if he was as alert as he testified, he should have seen the car when it came from the blind spot over into the westbound lane. His testimony is that it was only when a car was "tailgating him," to use his attorney's expression, that he could not see it. As soon as it moved to either side he could pick it up in one of his rearview mirrors.

The trial court specifically found that the appellants' evidence was "* * * insufficient to raise any issue of defendants' liability," discharged the jury, and sustained appellees' motion for dismissal at the close of appellants' case.

Before discussing this point, we will consider appellees' plea of contributory negligence. Appellees urge that the deceased was guilty of contributory negligence in failing to stop at the stop sign and in driving a slow-moving vehicle onto highway No. 30 in front of appellees' oncoming truck.

Clearly, any failure to stop at the stop sign could not have been the proximate cause of the collision. Accepting Thompson's statement, which from the respective speeds is patently on the conservative side, that his truck was 1,000 feet west of the intersection when the deceased came on the highway, yet the deceased was able to make the turn and to travel on his own side of the highway in full view of oncoming traffic for a distance of 700 feet. The fact that the car between appellees' truck and the deceased passed deceased without incident, and a milk truck which was behind appellees' truck was able to pass and to return to the right lane of traffic ahead of deceased, clearly negatives the failure to stop at the stop sign as being any part of the proximate cause.

Appellees also complain that the speed of the deceased's vehicle was too slow. It was undoubtedly the usual speed for the type of equipment involved. However, the speed estimate is Thompson's. The deceased at all times was in full view of Thompson, who was fully conscious of the speed at which the deceased was traveling. The testimony of Thompson is also that deceased's farm tractor was moving off the pavement when struck, evidently in response to Thompson's air horn when he started to cut back to the right lane.

As we view Thompson's testimony, there is no issue of contributory negligence in this record, so the question remains whether Thompson was guilty of negligence sufficient to create a submissible issue. We determine there is a question as to his negligence and the ruling of the trial court was in error. In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him. Dryer v. Malm, 163 Neb. 72, 77 N. W. 2d 804. We believe the question is not so much whether there was a submissible issue for a jury as whether Thompson was negligent as a matter of law.

The facts must be considered in the light of the rule

that generally it is negligence as a matter of law for a motorist to drive an automobile on a highway in such manner that he cannot stop in time to avoid a collision with an object within the range of his vision. See Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669.

Thompson was driving equipment weighing 18 tons. He knew deceased's equipment was traveling not to exceed 7 miles per hour. He knew he had a blind spot for 150 feet behind his truck. There was nothing to obstruct his front vision, and he was at all times able to see the movement of the deceased ahead of him. He had watched deceased travel 700 feet. At a speed of 7 miles per hour, this would take deceased at least 70 seconds. Thompson had driven the same truck and load on other occasions and should have known that equipment weighing 18 tons traveling at 20 miles per hour could not be stopped in 50 to 75 feet. Yet he attempted to pass at that distance without being certain that there was no car in the blind spot behind him or in so indicating his intention that a car behind him would make its presence known. He had a clear duty to exercise due care in attempting to pass the deceased. We do not believe he did. It is also evident he did not have his truck under reasonable control when he attempted to pass. We have said reasonable control by the operator of a motor vehicle is such as will enable him to avoid an accident involving another motor vehicle operated without negligence. Stanley v. Ebmeier, 166 Neb. 716, 90 N. W. 2d 290.

Appellees, as one of their propositions of law, quote the following from 5 Am. Jur., Automobiles, § 280, p. 656: "The driver of the front car owes no duty to the rear or trailing car except to use the road in the usual way, in keeping with the laws of the road, and until he has been made aware of it, by signal or otherwise, he has a right to assume either that there is no other automobile in close proximity to his rear or that, being there, it is under such control as not to interfere with his free use

of the road in front of and to the side of him in any lawful manner."

It seems to us that the appellees have confused their parties. It is not the driver of the car behind the truck who is involved in this action. The appellants are the personal representatives of the driver of the vehicle Thompson was trying to pass. They are the ones who are entitled to the benefit of the rule. This rule did not excuse Thompson when he acted on it to the detriment of the driver of the vehicle in front of him to whom he owed a duty to observe due care when he attempted to pass. To put it another way, if Thompson owed no duty to the unknown driver coming from the rear, how can that absolve him from his negligence in pulling back to the right and running into deceased.

Appellees also urge upon us the rule: "Where one driving an automobile is suddenly confronted by an emergency, requiring instant decision, he is only required to demean himself as an ordinary, careful, and prudent person would have done under like circumstances, and if he does that he is not held to be negligent." This is the sudden emergency rule we enunciated in Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689. It is not applicable to the facts in this case. It may well be that when Thompson became aware of the car behind him, he was in an emergency situation from which he could not extricate himself. Yet the situation was one of his own making. It was brought on by his own actions and omissions. It was nothing to which the deceased contributed in any way. He cannot relieve himself of his duty to deceased by creating an emergent situation.

As we said in Stanley v. Ebmeier, 166 Neb. 716, 90 N. W. 2d 290: "The doctrine of sudden emergency may not be successfully invoked by a litigant unless there is evidence that such an emergency existed, that the party seeking the benefit of the doctrine did not cause the emergency, and that he used due care to avoid it." The sudden emergency here, if there was one, was brought about

by the failure of Thompson to use due care to avoid it.

Stanley v. Ebmeier, *supra,* is a case very similar to the instant case. It also involved a rear end collision. Briefly, the facts in that case are that plaintiff entered the highway from a private road and turned west. Defendants' oil truck was at that time about 1,000 feet east, also traveling west. Plaintiff proceeded at about 25 to 30 miles per hour. The defendant driver at the time was going about 40 to 50 miles per hour. At a point 1,767 feet west of where plaintiff entered the highway there was an intersection for which plaintiff slowed down and gave a signal of his intention to turn south. Plaintiff reduced his speed to 15 to 20 miles per hour and defendant reduced his speed to 30 miles per hour. A flat-bottomed truck and a Buick, both proceeding east, passed plaintiff east of the intersection. After defendants' oil truck passed the flat-bottomed truck, the driver turned to the left to pass plaintiff's pickup, saw the Buick coming toward him, then tried to miss both. of them, but swerved to the north and ran into the plaintiff's pickup truck. The defendants pleaded contributory negligence of the plaintiff and a sudden emergency. We sustained a judgment for the plaintiff and said: "The findings of the .jury favorable to appellee are supported by the evidence. If there is evidence which will sustain a finding for the litigant who has the burden of proof in a cause, the trial court may not disregard it and decide the case as a matter of law."

In Johnson v. Schrepf, 154 Neb. 317, 47 N. W. 2d 853, we held: "Where the driver of a motor vehicle upon a public highway, in attempting to pass another vehicle from the rear, operates his vehicle in such a manner as to strike the other vehicle in passing, he is ordinarily guilty of negligence when the driver of the vehicle being passed is without fault." While in this case the driver changed his mind and did not pass, but turned back and struck the rear of the vehicle of the deceased, the reason for the rule is still applicable. In this case,

the deceased was without fault and there is nothing he could have done to have avoided the collision except not to be where he had a perfect right to be. Thompson's duty in passing the deceased was to be certain he had sufficient clearance to pass before attempting to do so. Sufficient clearance would require a sufficient stopping distance behind the deceased if he decided not to complete his act and to return to his former lane of traffic.

The crux of this case is that Thompson's view of part of the highway behind him was obstructed and he knew it. His duty therefore was greater than under normal circumstances. We have frequently held that conditions affecting the visibility of a motorist impose upon the driver the duty to exercise a degree of care commensurate with existing circumstances. Pierson v. Jensen, 148 Neb. 849, 29 N. W. 2d 625. The same reasoning should be applicable here. We hold that a motorist overtaking and passing another car must exercise vigilance commensurate with the surrounding conditions.

Appellees' motion for a directed verdict was sustained at the close of the appellants' evidence. The appellees' evidence is not before the court although Thompson was called as a witness for the appellants. The appellants argue that the evidence establishes that Thompson was guilty of negligence as a matter of law. That question was not and could not be presented to the trial court at that stage of the proceedings. Consequently, that issue is not before this court at this time so we make no determination in regard to that question.

There were errors in ruling on evidence with reference to the admissibility of the statement given by Thompson to the highway patrolman which we assume will not occur at the next trial, so they are not discussed herein.

For the reasons given above, we reverse the judgment of the trial court and remand the cause for a new trial in conformity with this opinion.

REVERSED AND REMANDED.