## JANEANE STANEK, APPELLEE, V. EDWARD JOHN SWIERCZEK AND MESSER'S AUTO BODY SUPPLY, INC., APPELLANTS.

307 N.W.2d 807

Filed July 2, 1981. No. 43414.

Thomas A. Gleason of Boland, Mullin & Walsh for appellants.

Daniel G. Dolan of Dolan, Dinsmore & Davis for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

Plaintiff Stanek brought this action for personal injuries and property damage resulting from a collision which occurred on January 3, 1977, between a motor vehicle operated by her and one driven by the

defendant Swierczek in the course of his employment by the defendant Messer's Auto Body Supply, Inc. The trial court found as a matter of law that the defendants were guilty of negligence which was the proximate cause of the collision. It submitted to the jury the questions of proximate cause and the amount of damages. The jury returned a verdict in the sum of $13,445.

The defendants have appealed to this court and assign and argue that the trial court erred in the following respects: (1) In directing a verdict against the defendants on the issue of liability; (2) In refusing to instruct the jury on the doctrine of sudden emergency (NJI 3.09) as requested by the defendants; and (3) In failing to sustain the objections of the defendants to the introduction in evidence of the cost to the plaintiff of procuring a policy of health insurance after the accident, and in instructing the jury that it could consider such cost as an element of damage included in "[t]he reasonable cost of medical and hospital insurance incurred to date and reasonably expected to continue in the future," which proximately resulted from the negligence of the defendants.

We hold that the court properly found as a matter of law that the negligence of the defendants was the sole proximate cause of the collision and that the trial court was correct in refusing to instruct on the sudden emergency doctrine. We further hold that the court erred in permitting the jury to consider, as an element of damage, the cost of medical and hospital insurance procured after the accident. We reverse the judgment and remand the cause for retrial on the issue only of the amount of damages proximately caused by the defendants' negligence.

The facts of the accident are without significant dispute. The collision occurred on Railroad Avenue, just north of its intersection with Drexel Street in the city of Omaha. Railroad Avenue is a four-lane street. The plaintiff, driving in the southbound inside

lane of Railroad Avenue, stopped her car at the edge of the intersection and signaled a left-hand turn. She waited for oncoming traffic in the northbound lanes to clear in order to make that turn. She testified she had been waiting for about a minute when she was struck in the rear by the vehicle operated by Swierczek.

Swierczek's version of the accident was that he was proceeding south in the inside lane of traffic on Railroad Avenue, following a van at about two to four lengths. The van suddenly turned into the outside lane to go around the plaintiff's car. Swierczek then saw the plaintiff's car for the first time. He had not been able to see the plaintiff's car because the van's windows were dirty and he could not see through them. He testified he could not turn right because of traffic in the outside lane. He slammed on his brakes and slid on slush into the plaintiff's car. The photographs received in evidence indicate that damage to the plaintiff's car was severe.

We discuss the first two assignments together. The sudden emergency instruction which the defendants requested be given is as follows: "When a person by a sudden emergency which is not due to his own negligence is placed in a position of immediate danger and has insufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as is required under ordinary circumstances, and if he pursues a course of action to avoid an accident, such as an ordinary, prudent person placed in a similar position might choose, he is not guilty of negligence, even though he did not adopt the wisest choice." NJI 3.09. It is a general rule: "[S]ubject to exceptions not applicable to this case . . . it is negligence as a matter of law for a motorist to drive an automobile on a public highway at any time at a speed or in such manner that it cannot be stopped or its course changed in time to avoid a collision with an object or obstruction discernible within the range of vision in the direction he is traveling."

*Stanley v. Ebmeier*, 166 Neb. 716, 90 N.W.2d 290 (1958) (syllabus of the court). It is a general principle that it is negligence as a matter of law for a motorist to drive a motor vehicle on a public highway at such a rate of speed that it cannot be stopped or turned aside in time to avoid an obstruction discernible within the range of his vision ahead, and the rule applies to driving in the daytime when vision is obstructed by physical conditions. *Pool v. Romatzke*, 177 Neb. 870, 131 N.W. 2d 593 (1964).

"The emergency rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed, and then it cannot be successfully invoked by one who has brought that emergency upon himself by his own acts or who has not used due care to avoid it." *Davis v. Dennert*, 162 Neb. 65, 75 N.W.2d 112 (1956) (syllabus of the court). The sudden emergency rule is not applicable when the invoking party brings about the situation himself by a failure to exercise due care. *Stanley v. Ebmeier, supra; Ritchie v. Davidson*, 183 Neb. 94, 158 N.W.2d 275 (1968).

The obstruction of the defendant's view by the van was simply an existing condition of which the defendant was fully aware. The same may be said of the condition of the street. A driver, traveling on city streets carrying a considerable amount of traffic, should anticipate that a vehicle preceding him may change lanes and may be required to do so by the slowing or stopping of vehicles making lawful turns. There is no evidence that either plaintiff or the driver of the van was guilty of any negligence whatsoever. The presence and movement on the street of these vehicles under the circumstances shown by the evidence were simply conditions of which the defendant was aware or bound to anticipate. *Maurer v. Harper*, 207 Neb. 655, 300 N.W.2d 191 (1981), is distinguishable because there the evidence was in dispute, and the

cars in question were traveling on an interstate limited-access highway with no directly intersecting streets and no left turns were permitted. The court did not err in directing the verdict against the defendant on the issue of liability for the collision, or in refusing to instruct on the doctrine of sudden emergency.

We now turn to the third assignment of error. As a result of the collision, plaintiff suffered a whiplash-type injury to soft tissue. She was treated by her family physician. He prescribed medication, wet heat packs, and the use of a cervical collar. He saw plaintiff in his office on January 3, 1977, and several times thereafter over a period of a few months. He last saw her on February 29, 1980, in preparation for trial. Her condition gradually improved, although she was still having minimal symptoms at the time of trial which would grow worse after participating in athletic activities such as swimming. The doctor predicted that the symptoms would continue for quite a long length of time. No one could say for certain how long. She saw two other physicians. Their testimony was not presented. However, one prescribed a home cervical traction unit and the other gave her a book on care of the neck. He also prescribed certain exercises which she was still carrying out at the time of trial. Her family doctor testified that in the future the use of cervical traction could be appropriate. Her family doctor did not refer her to a specialist, nor did he recommend nor did she receive hospitalization. He did not feel that there was any permanent disability.

Plaintiff incurred medical and drug expense for the above-described services and equipment, but no proof was made of the amount.

At the time of the accident, plaintiff was a high school student and employed only part time. Five months after the accident, on June 1, 1977, plaintiff went to work for the United States National Bank. As

an employee of the bank, she was entitled, without physical examination or restriction, to coverage under the employer's group health policy at a cost of $5.10 per month. She elected not to take that coverage because she was still covered by her parents' family policy. In July of 1978 she applied for group coverage with her employer and was unable to obtain group coverage because she still had symptoms of her injury. She then procured, from the insurer which carried her employer's group policy, individual coverage which was the same as that in the group policy, at a cost of $49.52 per month. An underwriter for the insurer testified that a new employee was entitled to coverage under the group policy within 31 days of beginning employment without evidence of insurability or a health statement. "Late entrant[s]," i.e., those not choosing to take the insurance during the first 31 days of employment, were considered on an individual basis. Plaintiff would be eligible for group coverage 1 year after complete recovery, i.e., after she had not been treated for 1 year. She would become eligible for reconsideration on May 1, 1980.

The contents and coverage of the individual policy were not offered in evidence. In her brief, plaintiff says that she "asks for increased health insurance premiums to serve the purpose of *such a fund* in protecting her from the costs of continued medical care necessitated by her injuries." (Emphasis supplied.) The reference, "such a fund," refers to the case of *Niles v. City of San Rafael*, 42 Cal. App. 3d 230, 116 Cal. Rptr. 733 (1974), where the jury awarded $50,000 as a medical emergency fund in a $4,025,000 verdict. That case involved an 11-year-old quadraplegic with a life expectancy of 69.6 years, who would be completely disabled for life and therefore would be incapable of doing anything for himself. The amount of the verdict was challenged on appeal. The court, in holding the verdict reasonable, said at 241, 116 Cal. Rptr. at 739: "Respondents point *to evidence supporting*

*the following composition* of the verdict." (Emphasis supplied.) Included in the items described was the medical emergency fund.

Plaintiff asserts the following proposition of law: "A plaintiff whose future expenses for normal health insurance will be increased by reason of tortiously inflicted injury is entitled to recover his added expenses for health insurance from the tortfeasor." She cites various texts and case authorities for the proposition. We have examined them all and none support the general proposition. The cases cited include such factual situations as increased costs of a premature delivery over normal delivery where the premature birth was caused by the defendant's negligence, and added laundry expense because of bladder incontinence resulting from a negligently caused injury. None of the above cases are support for the proposition asserted.

It is a fundamental principle of the law of damages that a person who suffers personal injury because of the negligence of another is entitled to recover for the reasonable value of medical care and expense incurred for the treatment of the injuries incurred to the time of trial, as well as the cost of those reasonably certain to be incurred in the future. *Yount v. Seager*, 181 Neb. 665, 150 N.W.2d 245 (1967).

In this case the plaintiff seeks to substitute a different measure of damages and one which the evidence does not show with reasonable certainty bears any relationship whatever to the medical expense incurred or reasonably certain to be incurred in the future. We think we may take judicial notice of the fact that the general health policy covers a variety of ailments and injuries and offers a variety of benefits and that the cost thereof bears no relationship whatever to the cost of treating a specific injury. We have been cited no authority which holds the cost of a general health policy may be substituted for proof of past and future medical expenses. The record contains no proof of

any kind to show any correlation between the cost of the health insurance and medical expenses to be incurred by the plaintiff in the future.

The judgment is reversed and the cause remanded for a new trial on the damage issue only.

REVERSED AND REMANDED.