STURGIS, Judge.
In this negligence action involving a collision between two trucks, defendant’s answer to the complaint denied the negligence charged and he counterclaimed to recover damages for personal injuries and property damage allegedly sustained as a result of plaintiff’s negligence. The jury returned a verdict for the defendant and plaintiff appeals from the final judgment entered thereon.
Upon conclusion of the evidence both parties moved for a directed verdict. The motions were denied. Following the verdict, plaintiff’s motion for judgment n. o. v. or for a new trial was also denied.
The points on appeal may be briefly stated thus: (1) Whether the manifest weight and probative effect of the evidence conclusively establishes that the defendant was guilty of actionable negligence; (2) whether the evidence shows any actionable negligence whatever on the part of the plaintiff ; (3) whether it was error, in the light of the evidence, to instruct the jury “that the law of Florida does not require any vé-hicle to come to a stop at grade railroad crossings except passenger buses, school buses and vehicles carrying explosive substances or flammable liquids as a cargo or a part of a cargo”; and (4) whether it was error (a) to deny plaintiff’s motion for a directed verdict, (b) to thereafter deny its motion for judgment n. o. v., and (c) to deny the alternative motion for a new trial.
Having concluded that the judgment must be reversed on the ground, inter alia, that the verdict is contrary to the manifest weight of the evidence, the facts, which are not materially in dispute, will be stated in substantial detail.
The accident occurred on a dark but clear night near a railroad grade crossing that intersects U. S. Highway #1 at a point approximately 1 x/% miles north of Bunnell, Florida, and approximately 16 miles south of St. Augustine, Florida. The crossing was protected by automatic flashing lights and crossing gates. The road was dry. It had four lanes of traffic, two north and two south, with a dividing strip in the center. Plaintiff’s truck was being driven by an employee and defendant was driving his *132 truck. Both were properly lighted and were traveling south on the highway, which was straight and level for several miles north of the scene of the accident. Drivers approaching the railroad crossing from the north had a clear view on both sides of the highway and across the intervening area for an appreciable distance up and down the railroad track, so that a lighted train might have readily been seen if any were there; however, the signal devices at the crossing did not indicate the presence of a train, plaintiff’s driver was not of the impression that one was approaching, and no train was involved in the accident. The defendant suffered severe brain injuries resulting in retrograde amnesia and an inability to recall or testify as to any of the facts surrounding the accident.
We here interpolate that our recitation of details concerning the railroad crossing — its location, warning devices, absence of a train, etc. — is primarily out of deference to the fact that appellee appears to lay great stress thereon. We also do so because it seems quite likely that the jury, in the light of the challenged instruction relating to the duty of drivers of certain types of motor vehicles to come to a stop at grade ■railroad crossings, applied an erroneous rule of law to the facts. Moreover, these details aid in discussing distances pertinent to the accident. We make these observations at this point in order to emphasize that our review of the record discloses no evidence upon which to conclude that plaintiff’s driver negligently reduced the speed of plaintiff’s truck at the time and place shown by the evidence; indeed, we find nothing in the evidence by which his operation of the truck might have been held to be negligent had there been no railroad crossing near the scene.
Two other trucks traveling south on the highway were near the scene but were not involved in the accident, one of which will be referred to as the Orange State truck and the other as the Mayflower truck. Those testifying as eyewitnesses were plaintiff’s driver and the drivers of these two trucks. At all times pertinent to this action the four trucks, except when passing and except as otherwise stated herein, were traveling south in the right-hand lane of traffic at an estimated speed of between 42 and 45 mph and in reasonably close proximity to each other.
At a point approximately 500 yardsmorth of the railroad crossing plaintiff’s truck was in the lead, followed by the Orange State truck, the Mayflower truck, and defendant’s truck, in that order, all occupying the right-hand lane of the two south-bound traffic lanes. At this point plaintiff’s driver commenced applying brakes in order to slow down for the railroad crossing, which he knew he was approaching, and at the same time caused the caution lights on the rear of his vehicle to blink — give a flashing signal — the purpose of which was to alert the attention of the driver of any approaching vehicle at his rear. The evidence is susceptible of the conclusion that because of the size of the Orange State truck, first in'line following plaintiff’s truck, the defendant and the driver of the Mayflower truck did not see the warning lights on plaintiff’s truck, which flashed (blinked) at frequent intervals up to the time of the accident, until just prior to the impact. Plaintiff’s driver testified that the reason he reduced the speed of his truck when approaching the crossing was to comply with a rule of his employer. We pause here to observe that such explanation has no bearing whatever upon the issue of negligence with which the jury was confronted.
When plaintiff’s driver reduced his speed and exhibited the caution lights, the driver of the Orange State truck (second in line) gave a passing signal, pulled out into the left lane of traffic, and at a speed which is variously estimated as from 10 to 30 mph proceeded to pass plaintiff’s truck, the front of the Orange State truck reaching a point opposite the rear end of plaintiff’s truck at a point approximately 25 feet north of the railroad crossing, at which time plain *133 tiff’s truck had been decelerated to a speed variously estimated as between 6 and 12 mph.
Just as the Orange State truck started to pass plaintiff’s vehicle up near the railroad crossing, the defendant (fourth in line) started to pass the Mayflower truck (third in line). The Mayflower truck was about three or four hundred yards north of the crossing when the defendant signaled his intention to pass the Mayflower truck. The Mayflower truck driver gave defendant a signal that it was clear for him (defendant) to pass. Thereupon, while the Orange State truck was in the process of passing plaintiff’s vehicle, the defendant pulled into the left-hand lane and started to pass the Mayflower truck.
At a point approximately 250 yards north of the railroad crossing the defendant was “neck and neck” with the Mayflower truck in the process of passing. At that time the Mayflower truck driver was traveling at a speed of approximately 42 mph and the Orange State truck was in the process of passing plaintiff’s vehicle up ahead. At the time defendant was coming around the Mayflower truck, the Mayflower truck was about 100 yards from the rear end of plaintiff’s vehicle.
After getting around the Mayflower truck, the defendant started cutting back into the right-hand lane and when he was at an angle with about half of the cab of his tractor back in the right-hand lane the Mayflower truck driver for the first time saw the brake lights come on on the plaintiff’s vehicle “about once . . . and then twice.” Immediately thereafter the Mayflower truck driver saw defendant’s brake lights go on and saw defendant cut back to the left and then there was a blinding flash and explosion caused by the impact between defendant’s vehicle and plaintiff’s vehicle.
As reluctant as we are to interfere with the jury’s conclusion on questions of fact, a careful review of the entire evidence in this cause produces the inescapable conclusion that the only basis upon which the jury could have arrived at its verdict herein was to find that it was negligent of plaintiff’s driver to decelerate the speed of plaintiff’s truck in the manner and at the time stated, and that such was the proximate cause of the accident; further, that the defendant was free of negligence proximately contributing thereto. The law applicable to the above undisputed facts will not support that result in either particular. We find no rule of law or statute, and none is cited to us, prohibiting or remotely suggesting that the manner in which plaintiff’s vehicle was operated at the time and place mentioned was either unlawful or negligent in character. On the other hand, the authorities are replete with cases holding that acts such as those which the uncontroverted evidence attributes to the defendant are highly negligent in character.
Section 317.451, Florida Statutes, F. S.A., relied on by defendant-appellee to support the challenged charge to the jury, applies only to passenger buses, school buses, and vehicles carrying flammables and explosives. It does, however, suggest a standard of care for others to follow, and cannot by any stretch of the imagination be construed as imposing a duty on other drivers not to slow down or stop, much less invest them with the right to high-tail it across railroad crossings with impunity. A motorist who prudently slows down or stops for a railroad crossing is not guilty of negligence and the facts in this case afford no exception to that rule.
Persons entering upon railroad crossings must exercise a high degree of care. Plaintiff’s driver acted in accord with every implication of the rule stated in Atlantic Coast Line Railroad Company v. Walker (Fla.App.), 113 So.2d 420, in which Judge Wigginton, speaking for this court, said:
“The settled law of Florida requires a person approaching a grade crossing to look and listen for oncoming trains, and to stop if what he sees indicates *134 that it would be dangerous to proceed further.”
The driver of a motor vehicle has the duty to have it under such control as to avoid known danger or that which is reasonably foreseeable. The evidence in this case is devoid of any showing that plaintiff’s driver was guilty of any negligence in the premises. Under the circumstances, it was error to deny plaintiff’s motion for a directed verdict on defendant’s counterclaim and we turn now to the question of whether the trial court erred in denying plaintiff’s motion for a directed verdict against defendant. We hold that the motion should have been granted.
Mr. Justice Roberts, speaking for the Florida Supreme Court in Bellere v. Madsen (Fla.), 114 So.2d 619, 80 A.L.R.2d 1, said:
“ * * * the driver of an automobile — a ‘dangerous instrumentality’— is charged with the responsibility of having the vehicle under control at all times, commensurate with the circumstances and the locale, and to maintain a sharp and attentive lookout in order to keep himself prepared to meet the exigencies of an emergency within reason and consistent with reasonable care and caution. Nelson v. Ziegler, Fla. 1956, 89 So.2d 780; King v. Griner, Fla.1952, 60 So.2d 177.”
To the same effect see: Gertler v. Peterson (Fla.App.), 116 So.2d 778; Southern Farm Bureau Casualty Insurance Company v. Caldwell (La.App.), Ill So.2d 842; Faircloth v. Hill (Fla.), 85 So.2d 870; Mississippi Power and Light Company v. Bradley, 220 Miss. 304, 70 So.2d 611; Macasphalt Corporation v. Murphy (Fla.), 67 So.2d 438; Petroleum Carrier Corporation v. Robbins (Fla.), 52 So.2d 666; G. Ferlita & Sons, Inc. v. Beck, 143 Fla. 509, 197 So. 340; Union Bus Company v. Smith, 104 Fla. 569, 140 So. 631; Geigy Chemical Corporation v. Allen (CCA 5, 1955), 224 F.2d 110; General Outdoor Advertising Co. v. Frost (CCA 5), 76 F.2d 127; Greyhound Corp. v. Lyman-Richey Sand and Gravel Corp., 161 Neb. 152, 72 N.W.2d 669.
Here, as in Lientz v. Holder (Fla.), 95 So.2d 505, the evidence is undisputed and the question of negligence or contributory negligence is a matter of law. It was the positive duty of the defendant not to undertake to pass the vehicles traveling in the same direction in which he was going without being sure from his own senses of his ability to do so without endangering the safety of persons and property of others lawfully upon said highway, and in this undertaking to have his vehicle under such control as to escape the consequences of any reasonably foreseeable emergency. Moreover, he is presumed to see that which is within the range of his vision or which by the use of due diligence he should have seen. Applying these principles to the overwhelming weight and probative effect of the evidence in this case, the conclusion is inescapable that this unfortunate accident was occasioned solely by the negligence of the defendant. We hold, therefore, that plaintiff’s motion for a directed verdict against the defendant should have been granted, with instructions to award damages to plaintiff in the sum of $11,102.90, that being the stipulated amount of the damages suffered by plaintiff in the premises; and in the light of such holding it was error, of course, to deny plaintiff’s motion for judgment non obstante veredicto.
While determination of the other point involved is not essential to the disposition of this appeal, we deem is appropriate to note that the instruction to which appellant takes exception provides a likely clue to the basis for the jury’s verdict herein. Faced with an instruction that under the laws of Florida passenger buses, school buses, and vehicles carrying explosive substances or flammable liquids as a cargo or a part of a cargo are required to come to a stop at grade railroad crossings, the jury might very well has been led to imply that it is negligence for a driver of another type of vehicle to slow down or *135 come to a stop at such crossings. Since that instruction states an abstract principle of law that is inapplicable to the facts-in this case, it should not have been given. Bessett v. Hackett (Fla.), 66 So.2d 694; Green v. Atlantic Co. (Fla.), 61 So.2d 185; Prior v. Pounds, 113 Fla. 308, 151 So. 890; Baldwin v. State, 46 Fla. 115, 35 So. 220.
For the reasons stated, the judgment appealed must be and it is hereby reversed. This cause is remanded with directions to enter judgment non obstante veredicto for the plaintiff, Central Truck Lines, Inc., in the stipulated amount of damages.
Reversed and remanded with directions.
CARROLL, DONALD K., C. J., and RAWLS, L, concur.